NO. 12-03-00222-CV



IN THE COURT OF APPEALS



TWELFTH COURT OF APPEALS DISTRICT



TYLER, TEXAS




THE STATE OF TEXAS FOR
§
 APPEAL FROM THE 



THE BEST INTEREST §
 COUNTY COURT AT LAW OF



AND PROTECTION OF I.H.
§
 CHEROKEE COUNTY, TEXAS

 

MEMORANDUM OPINION


 Appellant I.H. appeals from an order for temporary inpatient mental health services. After a
hearing, the trial court ordered I.H. committed to Rusk State Hospital for a period not to exceed ninety
days. In her sole issue, I.H. asserts the evidence is legally and factually insufficient to support the trial
court's order. We reverse and render.


Background

 On May 23, 2003, an application for court-ordered temporary mental health services was filed 
requesting the court to commit I.H. to Rusk State Hospital (the "Hospital") for a period not to exceed
ninety days. At the time the application was filed, I.H. was a patient at the Hospital. The application
was supported by two physician's certificates of medical examination for mental illness. The first
certificate, prepared by Dr. S. Srinivasan ("Srinivasan"), stated that Srinivasan examined and
evaluated I.H. on May 23, 2003. He diagnosed I.H. with schizophrenia. He also found that I.H. is
mentally ill, is likely to cause serious harm to others, is suffering severe and abnormal mental,
emotional, or physical distress, is experiencing substantial mental or physical deterioration of her
ability to function independently, and is unable to make a rational and informed decision as to whether
or not to submit to treatment.

 According to Srinivasan, I.H. is highly agitated, delusional, hallucinating, and believes
someone is trying to get her. Further, she threatened people by telling them that she had a gun. 
Srinivasan found that I.H. presents a substantial risk of serious harm to herself or others if not
immediately restrained, which is demonstrated by her behavior. Srinivasan's opinion is based on the
described behaviors. 

 On the same date, Dr. Sharon Necessary ("Necessary") also evaluated and examined I.H. She
diagnosed I.H. with schizophrenia paranoid type, chronic with acute exacerbation. She attempted to
administer antipsychotic medication, but I.H. refused treatment. Necessary found that I.H. is mentally
ill, is likely to cause serious harm to herself, is likely to cause serious harm to others, is suffering
severe and abnormal mental, emotional, or physical distress, is experiencing substantial mental or
physical deterioration of her ability to function independently, and is unable to make a rational and
informed decision as to whether or not to submit to treatment. I.H. told Necessary that "[p]eople come
in her house and hide her things, [and] then bring them back." I.H. believes that people live in her
attic; that they come down, steal from her, and mess up her house; and that they might harm her. 
Further, I.H. believed she had been artificially inseminated by her husband and became pregnant. I.H.
also shot through her ceiling and door, and refuses to take her medication. Necessary found that I.H.
presents a substantial risk of serious harm to herself or others if not immediately restrained, which is
demonstrated by her behavior or by evidence of severe emotional distress and deterioration in her
mental condition to the extent that she cannot remain at liberty. Necessary's opinion is based on the
behaviors she observed during her examination of I.H. 

 The hearing on the application was held on June 3, 2003. At the hearing, I.H.'s treating
physician, Dr. S. Siddiqui ("Siddiqui"), testified. Although Siddiqui completed a physician's
certificate of medical examination, he did not present it at trial. However, he reviewed Srinivasan's
certificate of medical examination, and concurred with his diagnosis. Because of I.H.'s mental illness,
schizophrenia, Siddiqui testified that I.H. is likely to cause serious harm to others. However, Siddiqui
stated that I.H. denied threatening people or having a gun. The trial court sustained I.H.'s motion to
strike all references in the record to I.H. shooting a gun at someone. According to Siddiqui, I.H. is
unable to make a rational and informed decision regarding whether or not to submit to treatment
because she lives alone, stopped taking her medication, and became more paranoid and delusional. 
Because of I.H.'s paranoia, she believes "other people might harm her," and told Siddiqui that "people
are reading my mind." Therefore, according to Siddiqui, I.H. does not want to interact with other
people. Siddiqui testified that I.H. is delusional because she believes she is pregnant even though she
knows she had a tubal ligation making it impossible for her to become pregnant. She informed
Siddiqui that she believes her husband artificially inseminated her and that she may be three to four
months pregnant. Because I.H. believes she is pregnant, she does not want to take medication that will
harm the baby. There is nothing in the records to indicate I.H. has been artificially inseminated nor
does I.H. show any signs of pregnancy.

 I.H.'s paranoia and delusions inhibit her ability to obtain and keep a job, follow instructions,
and interact appropriately in a public setting. Further, Siddiqui stated that I.H. could not successfully
navigate society in an appropriate manner and live independently, and is uncertain if she could
successfully navigate commerce and purchase appropriate, seasonal clothing. I.H.'s symptoms also
inhibit her ability to perform daily chores such as preparing meals, washing dishes, and keeping a
clean and sanitary household. Because of her paranoid feelings, I.H. may not eat if she is at home. According to Siddiqui, I.H. is suffering severe and abnormal mental, physical, or emotional
distress, and mental or physical deterioration or failure to function independently based on I.H.'s
inability, except for reasons of indigence, to provide for her basic needs, including food, clothing,
shelter, and safety. All these symptoms have been present since her admission on May 23, 2003.
Siddiqui testified that I.H. evidences a continuing pattern of behavior that tends to confirm her distress
and inability to function. Siddiqui's diagnosis is based on his personal examination and/or a thorough
review of the medical records, and on reasonable medical probability. Further, the Hospital is the least
restrictive available option at this time. 

 On cross-examination, Siddiqui admitted that I.H. has not made an overt act or statement of
intent to harm herself or others. Further, Siddiqui admitted that he believed I.H.'s statement that she
had a tubal ligation, but produced no medical records to confirm her assertion. Upon admission to the
Hospital, she needed prompting to dress herself because she was delusional and paranoid. At the time
of the hearing, Siddiqui testified that he believes I.H. can dress and feed herself without assistance or
prompting, and that she can take care of her personal hygiene.

 I.H. testified that she has a source of income through social security and SSI in the amount of
$500.00. She owns a house outside Rusk, and lives there alone most of the time. I.H. cleans house,
cooks meals, and shops for food and clothing. Although she does not have a vehicle, her children take
her where she needs to go. If her house caught on fire, she would call the fire department. If someone
broke into her home at night, she would call the police, and if she broke her leg, she would go to her
family doctor. I.H. takes blood pressure medication regularly and goes to a clinic approximately every
four weeks. According to I.H., she is not paranoid, but defending her rights against people trying to
get into her home. Someone appears to be hiding in her house and drugs are supposed to be hidden
in her loft. I.H. called the police, but no one followed up on her allegations.

 On cross-examination, I.H. testified that she had a tubal ligation, but that, last year, her
husband artificially inseminated her in her home. She does not know who performed the procedure
or her husband's role in it. I.H. stated that she believes her husband was forced to perform the
procedure because they had decided not to have any more children and a man was standing in her
kitchen. Although married, she and her husband do not live together.

 The trial court granted a directed verdict in favor of I.H. on the first two prongs of the State's
allegations, that I.H. is likely to cause serious harm to herself and that I.H. is likely to cause serious
harm to others. On June 3, 2003, the trial court found that I.H. is mentally ill and is suffering severe
and abnormal mental, emotional, or physical distress, is experiencing substantial mental or physical
deterioration of her ability to function independently, and is unable to make a rational and informed
decision as to whether or not to submit to treatment. The trial court entered an order for temporary
inpatient mental health services, committing I.H. to the Hospital for a period not to exceed ninety
days.


Sufficiency of the Evidence

 In her sole issue, I.H. argues that the trial court erred in ordering the temporary inpatient mental
health services based upon legally and factually insufficient evidence. She contends that the State's
evidence merely reflects that she may be mentally ill and may be in need of hospitalization, but does
not support the imposition of a commitment by clear and convincing evidence. Further, she argues
that the evidence failed to show any recent overt act or a continuing pattern of behavior to confirm that
she is unable to function independently.

Standard of Review

 In a legal sufficiency review where the burden of proof is clear and convincing evidence, we
must look at all the evidence in the light most favorable to the finding to determine whether a
reasonable trier of fact could have formed a firm belief or conviction that its findings were true. In
re J.F.C., 96 S.W.3d 256, 266 (Tex. 2002). We must assume that the fact finder settled disputed facts
in favor of its finding if a reasonable fact finder could do so and disregard all evidence that a
reasonable fact finder could have disbelieved or found incredible. Id. This does not mean that we are
required to ignore all evidence not supporting the finding because that might bias a clear and
convincing analysis. Id. 

 The appropriate standard for reviewing a factual sufficiency challenge is whether the evidence
is such that a fact finder could reasonably form a firm belief or conviction about the truth of the
petitioner's allegations. In re C.H., 89 S.W.3d 17, 25 (Tex. 2002). In determining whether the fact
finder has met this standard, we consider all the evidence in the record, both that in support of and
contrary to the trial court's findings. Id. at 27-29. Further, we must consider whether disputed
evidence is such that a reasonable fact finder could not have reconciled that disputed evidence in favor
of its finding. In re J.F.C., 96 S.W.3d at 266. If the disputed evidence is so significant that a fact
finder could not reasonably have formed a firm belief or conviction, then the evidence is factually
insufficient. Id. 

Order for Temporary Mental Health Services

 The trial judge may order a proposed patient to receive court-ordered temporary inpatient
mental health services if the judge or jury finds, from clear and convincing evidence, that the proposed
patient is mentally ill and, as a result of the mental illness, she is likely to cause serious harm to
herself, is likely to cause serious harm to others, or is (i) suffering severe and abnormal mental,
emotional, or physical distress, (ii) experiencing substantial mental or physical deterioration of her
ability to function independently, which is exhibited by her inability, except for reasons of indigence,
to provide for her basic needs, including food, clothing, health, or safety, and (iii) unable to make a
rational and informed decision as to whether or not to submit to treatment. Tex. Health & Safety
Code Ann. § 574.034(a) (Vernon 2003). 

 To be clear and convincing under this statute, the evidence must include expert testimony and,
unless waived, evidence of a recent overt act or a continuing pattern of behavior that tends to confirm
either the likelihood of serious harm to the proposed patient or others or the proposed patient's distress
and the deterioration of her ability to function. Tex. Health & Safety Code Ann. § 574.034(d)
(Vernon 2003). Clear and convincing evidence means the measure or degree of proof which will
produce in the mind of the trier of fact a firm belief or conviction as to the truth of the allegations sought
to be established. State v. Addington, 588 S.W.2d 569, 570 (Tex. 1979). The statutory requirements
for an involuntary commitment are strict because it is a drastic measure. In re C.O., 65 S.W.3d 175, 182
(Tex. App.-Tyler 2001, no pet.). 

Analysis

 The State provided expert testimony explaining that I.H. is mentally ill. According to Srinivasan,
she is highly agitated, delusional, hallucinating, and believes someone is trying to get her. Necessary's
certificate reported that I.H.'s delusions focused on people living in her attic who might harm her, and
a belief that she was pregnant because her husband artificially inseminated her. At trial, Siddiqui
testified that I.H. is mentally ill, paranoid, and delusional. She believes people may harm her and are
reading her mind. She also believes that she is pregnant. I.H.'s delusions and paranoia inhibit her ability
to obtain and keep a job, navigate society in an appropriate manner, live independently, and perform
normal daily chores. However, Siddiqui admitted that, at the time of trial, I.H. is able to dress and feed
herself without assistance or prompting, and is able to take care of her personal hygiene.

 No doctor provided evidence of an overt act. In fact, Siddiqui admitted that I.H. has not
committed an overt act. Further, all references in the record to I.H. shooting a gun at someone were
stricken by the trial judge. Thus, we may not consider the alleged shooting as evidence of a recent overt
act. Moreover, although I.H. refuses medication that she believes would harm her baby, such refusal is
insufficient evidence of an overt act or continuing pattern of behavior that demonstrates her distress and
deterioration of her ability to function. See In re Breeden, 4 S.W.3d 782, 789 (Tex. App.-San Antonio
1999, no pet.); Johnstone v. State, 961 S.W.2d 385, 389 (Tex. App.-Houston [1st Dist.] 1997, no writ);
Broussard v. State, 827 S.W.2d 619, 622 (Tex. App.-Corpus Christi 1992, no writ); In re J.S.C., 812
S.W.2d 92, 95-96 (Tex. App.-San Antonio 1991, no writ).

 The State provided evidence and expert testimony that I.H. was delusional and paranoid from
her admittance at the Hospital until the time of trial. However, evidence of continuing delusional
behavior merely reflects that an individual is mentally ill and in need of hospitalization, but does not
provide the continuing pattern of behavior necessary to support a commitment. See In re C.O., 65
S.W.3d at 182; Broussard, 827 S.W.2d at 622. Further, Siddiqui failed to provide any evidence to
support his opinion that I.H. demonstrates a continuing pattern of behavior that tends to confirm her
distress and inability to function. Expert opinions and recommendations must be supported by a
showing of the factual bases on which they are grounded. See In re T.G., 7 S.W.3d 248, 252 (Tex.
App.-Dallas 1999, no pet.); Mezick v. State, 920 S.W.2d 427, 430 (Tex. App.-Houston [1st Dist.] 1996,
no writ). Moreover, the record contains no expert testimony or medical records indicating any actions,
events, or conditions that reflect a continuing pattern of behavior tending to confirm I.H.'s distress and
deterioration of her ability to function. In fact, I.H.'s behavior during the initial hospitalization is the
only evidence provided by the State to establish a continuing pattern of behavior. This time period is
too limited to demonstrate the continuing pattern of behavior required to sustain her commitment. 

 Because there is no evidence of an overt act or continuing pattern of behavior that tends to
confirm I.H.'s distress and a deterioration of her ability to function, the evidence is legally insufficient
to support the trial court's finding based upon section 574.034(a) of the Texas Health and Safety Code. 
Therefore, viewing the evidence in the light most favorable to the finding, we conclude that a reasonable
trier of fact could not have formed a firm belief or conviction that this finding was true. See In re
J.F.C., 96 S.W.3d at 266. Having determined that the evidence is legally insufficient, it is unnecessary
for us to address I.H.'s argument that the evidence is factually insufficient to support the trial court's
finding. See Tex. R. App. P. 47.1.


Conclusion

 Based upon our review of the record, we conclude that the evidence is legally insufficient to
support the trial court's order of commitment for temporary inpatient mental health services. Therefore,
we reverse the trial court's order and render judgment denying the State's application for court-ordered
temporary mental health services.

 SAM GRIFFITH 

 Justice 


Opinion delivered March 17, 2004.

Panel consisted of Worthen, C.J., Griffith, J. and DeVasto, J.

(PUBLISH)