NO.
12-06-00074-CV

 

IN THE COURT OF APPEALS 

 

TWELFTH COURT OF APPEALS DISTRICT

 

TYLER, TEXAS

THE STATE OF TEXAS FOR        §                      APPEAL FROM THE 

 

FOR THE BEST INTEREST          §                      COUNTY COURT AT LAW

 

AND PROTECTION OF
T.S.          §                      CHEROKEE COUNTY, TEXAS

                                                                                                                                                           


MEMORANDUM OPINION

            T.S. appeals
from an order for temporary inpatient mental health services.  In his sole issue on appeal, T.S. asserts the
evidence is legally and factually insufficient to support the order.  We affirm.

 

Background

            On
February 21, 2006, an application for court ordered temporary mental health
services was filed  requesting the trial
court to commit T.S. to the Rusk State Hospital (the “Hospital”) for a period
not to exceed ninety days.  At the time
the application was filed, T.S. was a patient at the Hospital.  The application was supported by two
physician’s certificates of medical examination for mental illness.  The first certificate stated that, on
February 16, 2006,  Dr. Harry Thompson
evaluated and examined T.S. and diagnosed him with schizoaffective disorder,
bipolar type.  According to Thompson,
T.S. was mentally ill and was suffering severe and abnormal mental, emotional,
or physical distress, was experiencing substantial mental or physical
deterioration of his ability to function independently, and was unable to make
a rational and informed decision as to whether or not to submit to
treatment.  As the basis for this
opinion, Thompson reported that, until two or three weeks before the
evaluation, T.S. had many episodes of aggression.  He was confused and perplexed. According to
Thompson, T.S. had difficulty retaining and registering new information. 

            On
February 24, 2006, Dr. R.H. Rodriguez evaluated and examined T.S. and diagnosed
him with schizoaffective disorder, bipolar type.  According to Rodriguez, T.S. was mentally ill
and was suffering severe and abnormal mental, emotional, or physical distress,
was experiencing substantial mental or physical deterioration of his ability to
function independently, and was unable to make a rational and informed decision
as to whether or not to submit to treatment. 
As his basis for this opinion, Rodriguez stated that T.S. told him he
was hitting on people when he “got here,” but not anymore, that he broke a
window at a neurological hospital, and that he had heard voices, but did not
believe that he did anymore.  T.S. also
stated that he was a soldier for God to keep people from killing others, but
did not know how he was supposed to do so. 
Additionally, Rodriguez stated that T.S. was cooperative and
conversant.  However, at times, it was
difficult to follow T.S.’s train of thought because he moved from one subject
to another.  According to Rodriguez, T.S.’s
thought associations were loose, his ability to plan seemed impaired, his
affect was blunted, and he frequently paused before answering questions as if
he was still hearing voices.

            The
hearing on the application was held on February 28.  Thompson testified that he diagnosed T.S.
with schizoaffective disorder, bipolar type, and that he was suffering severe
and abnormal mental, emotional, or physical distress, was experiencing
substantial mental or physical deterioration of his ability to function
independently, exhibited by T.S.’s inability, except for reasons of indigence,
to provide for his basic needs, including food, clothing, health, or safety,
and was unable to make a rational and informed decision as to whether or not to
submit to treatment. Thompson did not believe that T.S. had the ability to take
care of himself in the most basic way because of his psychiatric condition and
possible brain damage.  During the
evaluation, T.S. exhibited almost constant confusion, perplexity, short term
memory loss, and an inability to take in or retain new information.  Thompson stated that he was aware that T.S.
had a history of head injury and was concerned that, in addition to his
psychosis, he had a neurological problem. 

            Thompson
testified that T.S.’s psychosis included paranoia and, as a result, he had
targeted, antagonized, and provoked another patient who was particularly
aggressive.  According to Thompson, T.S.
and that patient had “exchanged blows.” 
In fact, Thompson stated that T.S. struck that patient about two weeks
before the hearing and, in retaliation, was hit by that same patient the week
of the hearing.  T.S. had not learned
that this provocation endangered him. 
Thompson believed that outside the hospital T.S. would be at risk to
apply the same “psychotic notions” and target someone else. 

            According
to Thompson, T.S. had too much trouble comprehending and was too confused and
perplexed to be able to take care of himself. 
Thompson believed that T.S. could go to a restaurant, order food, and
pay his bill, but opined that it would be a struggle.  On numerous occasions, T.S. was not aware of
what was going on around him.  According
to Thompson, T.S. was aware of his impairment, continuously asking what was
going on or stating that he could not remember why he entered a room.  Thompson stated that the Hospital was the least
restrictive available treatment option for T.S. at this time. 

            At
the time of the hearing, Thompson admitted that T.S. had a minimal degree of
improvement in his psychosis.  However,
T.S. had numerous emergency injections. 
Thompson testified that T.S. did not require prompting or assistance in
the act of feeding himself and, if he was in a house with food, T.S. would know
how to obtain food for himself.  However,
Thompson did not believe that T.S. could provide for his needs because T.S.
could not earn money to pay for them. 
T.S. did not require prompting or assistance in clothing himself,
although he required prompting to comb his hair and brush his teeth.  Thompson believed that T.S. understood the
dangers of remaining in a burning building or sitting on a fire ant bed and
understood the need to seek medical attention for a broken arm.  According to Thompson, T.S. was not ready for
placement in a nursing home or rehabilitation center with skilled staff because
of the severity of his psychosis. 

            Thompson
admitted that T.S. signed a written consent for medication.  According to Thompson, T.S. had the capacity
to make a rational and informed decision whether to submit to medication
treatment in that he understood or remembered taking one particular medication.  When Thompson requested consent for that
medication, T.S. did so.  Thompson
admitted that T.S. was involved and engaged in his treatment and was able to
make a decision regarding his treatment. 
T.S. complied with his treatment and voluntarily took his medication.

            On
February 28, the trial court found, by clear and convincing evidence, that T.S.
was mentally ill and was suffering severe and abnormal mental, emotional, or
physical distress, was experiencing substantial mental or physical deterioration
of his ability to function independently, exhibited by T.S.’s inability, except
for reasons of indigence, to provide for his basic needs, including food,
clothing, health, or safety, and was unable to make a rational and informed
decision as to whether or not to submit to treatment.  The trial court entered an order for
temporary inpatient mental health services, committing T.S. to the Hospital for
a period not to exceed ninety days.  This
appeal followed.

 

Sufficiency
of the Evidence

            In
his sole issue, T.S. argues that the evidence is neither legally nor factually
sufficient to support the order of commitment. 
T.S. contends that the testimony fails to show an overt act or a
continuing pattern of behavior that tends to confirm his distress and the deterioration
of his ability to function.  The State
disagrees.

Standard of Review

            In
a legal sufficiency review where the burden of proof is clear and convincing
evidence, we must look at all the evidence in the light most favorable to the
finding to determine whether a reasonable trier of fact could have formed a
firm belief or conviction that its findings were true.  In re J.F.C., 96 S.W.3d 256,
266 (Tex. 2002).  We must assume that the
fact finder settled disputed facts in favor of its finding if a reasonable fact
finder could do so and disregard all evidence that a reasonable fact finder
could have disbelieved or found incredible. 
Id.  This does not
mean that we are required to ignore all evidence not supporting the finding
because that might bias a clear and convincing analysis.  Id. 








            The
appropriate standard for reviewing a factual sufficiency challenge is whether
the evidence is such that a fact finder could reasonably form a firm belief or
conviction about the truth of the petitioner’s allegations.  In re C.H., 89 S.W.3d 17, 25
(Tex. 2002).  In determining whether the
fact finder has met this standard, we consider all the evidence in the record,
both that in support of and contrary to the trial court’s findings.  Id. at 27-29.  Further, we must consider whether disputed
evidence is such that a reasonable fact finder could not have reconciled that
disputed evidence in favor of its finding. 
In re J.F.C., 96 S.W.3d at 266.  If the disputed evidence is so significant
that a fact finder could not reasonably have formed a firm belief or
conviction, then the evidence is factually insufficient.  Id.  

Involuntary Commitment Order

            The
trial judge may order a proposed patient to receive court ordered temporary
inpatient mental health services if the judge or jury finds, from clear and
convincing evidence, that the proposed patient is mentally ill and, as a result
of the mental illness, he is likely to cause serious harm to himself, is likely
to cause serious harm to others, or is (i) suffering severe and abnormal
mental, emotional, or physical distress, (ii) experiencing substantial mental
or physical deterioration of his ability to function independently, which is
exhibited by his inability, except for reasons of indigence, to provide for his
basic needs, including food, clothing, health, or safety, and (iii) unable to
make a rational and informed decision as to whether or not to submit to
treatment.  Tex. Health & Safety Code Ann. § 574.034(a) (Vernon
2003). 

            To
be clear and convincing under this statute, the evidence must include expert
testimony and, unless waived, evidence of a recent overt act or a continuing
pattern of behavior that tends to confirm either the likelihood of serious harm
to the proposed patient or others or the proposed patient’s distress and the
deterioration of his ability to function. 
Tex. Health & Safety Code
Ann. § 574.034(d) (Vernon 2003). 
Clear and convincing evidence means the measure or degree of proof that
will produce in the mind of the trier of fact a firm belief or conviction as to
the truth of the allegations sought to be established.  State v. Addington, 588 S.W.2d 569,
570 (Tex. 1979).  The statutory
requirements for an involuntary commitment are strict because it is a drastic
measure.  In re C.O., 65
S.W.3d 175, 182 (Tex. App.–Tyler 2001, no pet.). 

            The
State provided expert testimony from Thompson and Rodriguez who examined T.S.
and diagnosed him with schizoaffective disorder, bipolar type.  However, expert testimony confirming mental
illness, standing alone, will not support an involuntary commitment.  T.G. v. State, 7 S.W.3d 248,
252 (Tex. App.–Dallas 1999, no pet.). 
Both doctors provided evidence showing that T.S. was mentally ill.  Thompson reported that T.S. was confused and
perplexed and had difficulty retaining and registering new information.  Rodriguez stated that T.S. admitted he had
heard voices in the past and said that he was a soldier for God to keep people
from killing others, but did not know how to do so.  According to Rodriguez, T.S.’s conversation
was difficult to follow because he moved from subject to subject, his thought
associations were loose, his ability to plan seemed impaired, his affect was
blunted, and he frequently paused before answering questions as if he was still
hearing voices. Evidence of continuing delusional or paranoid behavior merely
reflects that an individual is mentally ill and in need of hospitalization, but
does not provide the continuing pattern of behavior necessary to support a
commitment.  See In re C.O.,
65 S.W.3d at 182; Broussard v. State, 827 S.W.2d 619, 622 (Tex.
App.–Corpus Christi 1992, no writ). 

            An
expert opinion recommending commitment must be supported by the factual bases
on which it is grounded and not simply recite the statutory criteria.  See J.M. v. State, 178 S.W.3d
185, 193 (Tex. App.–Houston [1st Dist.] 2005, no pet.).  What is necessary is the expert’s description
of the patient’s specific behaviors on which his or her opinion is based.  See id.  We must examine the record to determine
whether there is clear and convincing evidence showing an overt act or a
continuing pattern of behavior that tended to confirm his distress and the
deterioration of his ability to function. 
See Tex. Health &
Safety Code Ann. § 574.034(d). 

            According
to Rodriguez, T.S. admitted hitting on people when he came to the Hospital and
stated that he broke a window at another medical facility.  Thompson reported that, until two or three
weeks before his evaluation, T.S. had many episodes of aggression.  At trial, Thompson testified that T.S.’s
psychosis included paranoia, leading him to target, antagonize, and provoke
another patient at the Hospital.  As a
result, T.S. and that patient had fought each other and, in fact, T.S. struck
that patient about two weeks before the hearing.  According to Thompson, T.S. had not learned
that his behavior endangered him.  In Thompson’s
opinion, T.S. would be at risk to target someone outside the Hospital.  Thompson stated that T.S. required numerous
emergency injections. 

            As
noted above, Rodriguez and Thompson observed T.S.’s almost constant confusion. Thompson
testified that, on numerous occasions, T.S. was not aware of what was going on
around him, continuously asking what was going on or why he had entered a
room.  In Thompson’s opinion, T.S. had
too much trouble comprehending and was too confused and perplexed to be able to
take care of himself.  Thompson did not
believe that T.S. could provide for his needs because he could not earn money
to do so.  T.S. also required prompting
to brush his hair and teeth. 

            We
consider T.S.’s aggression when he came to the Hospital and with a patient in
the Hospital to be recent overt acts or a continuing pattern of behavior that
tended to confirm his distress and the deterioration of his ability to
function.  See  Tex.
Health & Safety Code Ann. § 574.034(d).  Moreover, we regard T.S.’s confusion,
perplexity, and lack of comprehension and knowledge of his surroundings to be a
continuing pattern of behavior that tended to confirm his distress and the
deterioration of his ability to function.  See id.  Viewing all the evidence in the light most
favorable to the findings, we conclude a reasonable trier of fact could have
formed a firm belief or conviction that T.S. was suffering severe and abnormal
mental, emotional, or physical distress, was experiencing substantial mental or
physical deterioration of his ability to function independently, and was unable
to make a rational and informed decision as to whether or not to submit to
treatment.  See Tex. Health & Safety Code Ann. §
574.034(a), (d); In re J.F.C., 96 S.W.3d at 266.  Therefore, the evidence is legally sufficient
to support the trial court’s order. See In re J.F.C., 96 S.W.3d
at 266. 

            Having
determined that the evidence is legally sufficient to support the order, we
address factual sufficiency and consider all of the evidence, both that in
support of and contrary to the trial court’s findings.  See In re C.H., 89 S.W.3d at
27-29.  Thompson admitted that T.S. could
order food in a restaurant, with a struggle, and feed himself if he was in a
house with food.  According to Thompson,
he did not require prompting or assistance in feeding or clothing himself.  T.S. could recognize personal dangers, such
as remaining in a burning building. 
However, Thompson stated that T.S. did not realize that his provocation
of another patient endangered him. 
Although Thompson admitted that T.S. consented to medication and
cooperated with his treatment, T.S. only consented to a particular medication
that he understood or remembered taking in the past.  The trial court was entitled to disregard the
evidence contrary to the State’s position.  See id.  Based upon our review of the record as a
whole, we conclude that, although there is some disputed evidence, this
evidence is not so significant that a reasonable trier of fact could not have reconciled
this evidence in favor of its finding and formed a firm belief or conviction
that T.S. was suffering severe and abnormal mental, emotional, or physical
distress, was experiencing substantial mental or physical deterioration of his
ability to function independently, and was unable to make a rational and
informed decision as to whether or not to submit to treatment.  See Tex.
Health & Safety Code Ann. § 574.034(a)(d); In re J.F.C.,
96 S.W.3d at 266.  Therefore, the
evidence is factually sufficient to support the trial court’s order.  See In re J.F.C., 89 S.W.3d at
266.  Accordingly, we conclude that the
trial court met the obligations imposed by Section 574.034 of the Texas Health
& Safety Code and overrule T.S.’s sole issue.

Disposition

            The judgment
of the trial court is affirmed.

 

 

 

                                                                                                   JAMES T. WORTHEN   

                                                                                                               Chief Justice

 

 

Opinion delivered July 31,
2006.

Panel consisted of Worthen,
C.J. and Griffith, J.

 

 

 

 

 

 

 

 

 

 

 

 

 

 

 

 

 

 

 

 

 

 

 

 

 

(PUBLISH)