NO.
12-06-00112-CV

 

IN THE COURT OF APPEALS 

 

TWELFTH COURT OF APPEALS DISTRICT

 

TYLER, TEXAS

THE STATE OF TEXAS     §                      APPEAL FROM THE 

 

FOR THE BEST INTEREST          §                      COUNTY COURT AT LAW

 

AND PROTECTION OF
E.B.         §                      CHEROKEE COUNTY, TEXAS

                                                                                                                                                           


MEMORANDUM OPINION

            E.B. appeals
from an order for temporary inpatient mental health services.  In his sole issue on appeal, E.B. asserts the
evidence is legally and factually insufficient to support the order.  We reverse and render.

 

Background

            On
March 29, 2006, an application for court ordered temporary mental health
services was filed requesting the trial court to commit E.B. to the Rusk State
Hospital (the “Hospital”) for a period not to exceed ninety days.  At the time the application was filed, E.B.
was a patient at the Hospital. The application was supported by two physician’s
certificates of medical examination for mental illness.  The first certificate stated that, on March
24, 2006,  Dr. Rodolfo H. Rodriguez
evaluated and examined E.B. and diagnosed him with schizoaffective disorder,
bipolar type.  Rodriguez stated that E.B.
was supposed to be taking Geodon and Antivan, but he suspected that E.B. was
not taking his medication.  According to
Rodriguez, E.B. was mentally ill and was suffering severe and abnormal mental,
emotional, or physical distress, was experiencing substantial mental or
physical deterioration of his ability to function independently, and was unable
to make a rational and informed decision as to whether or not to submit to
treatment. 

            As
the basis for this opinion, Rodriguez reported that E.B. stated that he thought
Rodriguez was incompetent for suggesting that he was mentally ill just because
he talked fast.  E.B. stated that he was
a “fast person,” an athlete, a genius, and royalty.  E.B. denied being manic and stated that he
was going to fight Rodriguez at “every turn.” 
Further, E.B. informed Rodriguez that he was going to win his lawsuit
and that Rodriguez would lose his job. 
Rodriguez also reported that E.B. was hypertalkative and his speech was
rapid and pressured.  According to
Rodriguez, E.B. exhibited flight of ideas, looseness of association, and
grandiose as well as paranoid delusional beliefs.  Rodriguez noted that E.B. was verbally
aggressive and threatening. 

            On
March 29, 2006,  Dr. Harry Thompson
evaluated and examined E.B. and diagnosed him with schizoaffective disorder,
bipolar type.  According to Thompson,
E.B. was mentally ill and was suffering severe and abnormal mental, emotional,
or physical distress, was experiencing substantial mental or physical
deterioration of his ability to function independently, and was unable to make
a rational and informed decision as to whether or not to submit to
treatment.  As the basis for this
opinion, Thompson reported that E.B. immediately began speaking loudly and
rapidly and constantly talked with rapid shift of topics.  E.B. also stated that he had filed many
lawsuits.  According to Thompson, E.B.
bowed as he entered and left and had coated himself with an excessive amount of
a greasy substance.  

            The
hearing on the application was held on April 4. 
Rodriguez testified that he diagnosed E.B. with schizoaffective
disorder, bipolar type, and that he was suffering severe and abnormal mental,
emotional, or physical distress, was experiencing substantial mental or
physical deterioration of his ability to function independently, exhibited by
E.B.’s inability, except for reasons of indigence, to provide for his basic
needs, including food, clothing, health, or safety, and was unable to make a
rational and informed decision as to whether or not to submit to
treatment.  According to Rodriguez, he
had been working with E.B. for several weeks, and his disorder tended to be
cyclic, or bipolar.  Although Rodriguez
could not recall the exact details of what happened at E.B.’s home, he believed
there was verbal aggression.  When E.B.
arrived at the Hospital, he was hypertalkative with rapid, pressured speech,
expressed a variety of grandiose delusional beliefs, and exhibited flight of
ideas and loose thought associations. 
Within a few days of taking medication, E.B. began to calm down.  However, Rodriguez stated that, a few days
later, E.B. began to exhibit the same symptoms that precipitated his
admission.  Even though Rodriguez suspected
that E.B. was not taking his medication, E.B. denied it, and the behavior
continued. E.B. exhibited some verbal aggression, but no physical aggression or
threats to harm himself or others.  E.B.
was usually cordial, but argumentative. Rodriguez stated that, two weeks before
the hearing, E.B. became, for the first time, verbally aggressive towards him.

            According
to Rodriguez, on the Thursday before the hearing, E.B. walked by his office and
stated that he was willing to take another medication.  Rodriguez admitted that E.B. made this
decision on his own and that he believed E.B. was able to make an informed
decision as to whether or not to submit to treatment.  From E.B.’s more recent behavior, Rodriguez
believed that his clinical condition was changing and improving, although not
completely remitted.  Rodriguez was
convinced that E.B. was taking his medication because he acted as if he felt
better and stated that the medicine was good. 
At the time of trial, Rodriguez stated that E.B. was already responding
to the medication even though he was still very hypertalkative with rapid
pressured speech and expressed a lot of delusional beliefs.  According to Rodriguez, E.B.’s behavior
caused a lot of attention in the community, people began to believe that there
was something wrong with him and, as a result, he was brought back to the
Hospital.  Rodriguez stated that E.B.’s
situation had become a revolving door. Rodriguez believed that medication would
help E.B. In Rodriguez’s opinion, E.B. would need to remain at the Hospital for
approximately two more weeks. 

            E.B.
stated that he was argumentative and a little verbally aggressive because he
had a lawsuit.  According to E.B., a
lawyer informed him that he had to get the lawsuit taken care of inside the
Hospital.  However, he did not appreciate
the fact that he had not received any assistance or cooperation as far as the
lawsuit was concerned.  E.B. stated that
he had a lawsuit against the Hospital that he was going to file as soon as he
left.  He was appealing, but because he
was recommitted, he would have to “file” again. 

            E.B.
stated that he knew a mistake had been made about his situation.  He knew the rights and wrongs of taking
medication and knew if something was wrong, he needed medication.  He stated that if nothing was wrong, he did
not need medication.  According to E.B.,
ten years ago he took a legal test that stated he was not mentally ill and did
not need to be medicated.  If Rodriguez
wanted to keep him another two weeks, he was ready to “worship on Passover” and
was ready to “get out” before the ninth. 
E.B. stated that he was happy because he knew that he was going to win
the lawsuit.  E.B. stated that everything
was okay and that he was not trying to hurt Rodriguez. According to E.B., the
other doctors were incompetent and he had “something against” them.  E.B. stated that Rodriguez was not
incompetent and was the best doctor he had had since being at the Hospital. 

            On
April 4, the trial court found, by clear and convincing evidence, that E.B. was
mentally ill and was suffering severe and abnormal mental, emotional, or
physical distress, was experiencing substantial mental or physical
deterioration of his ability to function independently, exhibited by E.B.’s
inability, except for reasons of indigence, to provide for his basic needs,
including food, clothing, health, or safety, and was unable to make a rational
and informed decision as to whether or not to submit to treatment.  The trial court entered an order for
temporary inpatient mental health services, committing E.B. to the Hospital for
a period not to exceed ninety days.  This
appeal followed.

 

Sufficiency
of the Evidence

            In
his sole issue, E.B. argues that the evidence is neither legally nor factually
sufficient to support the order of commitment. E.B. contends that the testimony
fails to show an overt act or a continuing pattern of behavior that tends to
confirm his distress and deterioration of his ability to function.  The State disagrees.

Standard of Review

            In
a legal sufficiency review where the burden of proof is clear and convincing
evidence, we must look at all the evidence in the light most favorable to the
finding to determine whether a reasonable trier of fact could have formed a
firm belief or conviction that its findings were true.  In re J.F.C., 96 S.W.3d 256,
266 (Tex. 2002).  We must assume that the
fact finder settled disputed facts in favor of its finding if a reasonable fact
finder could do so and disregard all evidence that a reasonable fact finder could
have disbelieved or found incredible.  Id.  This does not mean that we are required to
ignore all evidence not supporting the finding because that might bias a clear
and convincing analysis.  Id. 

            The
appropriate standard for reviewing a factual sufficiency challenge is whether
the evidence is such that a fact finder could reasonably form a firm belief or
conviction about the truth of the petitioner’s allegations.  In re C.H., 89 S.W.3d 17, 25
(Tex. 2002).  In determining whether the
fact finder has met this standard, we consider all the evidence in the record,
both that in support of and contrary to the trial court’s findings.  Id. at 27-29.  Further, we must consider whether disputed
evidence is such that a reasonable fact finder could not have reconciled that
disputed evidence in favor of its finding. 
In re J.F.C., 96 S.W.3d at 266.  If the disputed evidence is so significant
that a fact finder could not reasonably have formed a firm belief or
conviction, then the evidence is factually insufficient.  Id.  

Involuntary Commitment Order

            The
trial judge may order a proposed patient to receive court ordered temporary
inpatient mental health services if the judge or jury finds, from clear and
convincing evidence, that the proposed patient is mentally ill and, as a result
of the mental illness, he is likely to cause serious harm to himself, is likely
to cause serious harm to others, or is (i) suffering severe and abnormal
mental, emotional, or physical distress, (ii) experiencing substantial mental
or physical deterioration of his ability to function independently, which is
exhibited by his inability, except for reasons of indigence, to provide for his
basic needs, including food, clothing, health, or safety, and (iii) unable to
make a rational and informed decision as to whether or not to submit to
treatment.  Tex. Health & Safety Code Ann. § 574.034(a) (Vernon
2003).

            To
be clear and convincing under this statute, the evidence must include expert
testimony and, unless waived, evidence of a recent overt act or a continuing
pattern of behavior that tends to confirm either the likelihood of serious harm
to the proposed patient or others or the proposed patient’s distress and the
deterioration of his ability to function. 
Tex. Health & Safety Code
Ann. § 574.034(d) (Vernon 2003). 
Clear and convincing evidence means the measure or degree of proof that
will produce in the mind of the trier of fact a firm belief or conviction as to
the truth of the allegations sought to be established.  State v. Addington, 588 S.W.2d
569, 570 (Tex. 1979).  The statutory
requirements for an involuntary commitment are strict because it is a drastic
measure.  In re C.O., 65
S.W.3d 175, 182 (Tex. App.–Tyler 2001, no pet.). 

            The
State provided expert testimony from Rodriguez and Thompson who examined E.B. and
diagnosed him with schizoaffective disorder, bipolar type.  However, expert testimony confirming mental
illness, standing alone, will not support an involuntary commitment.  T.G. v. State, 7 S.W.3d 248,
252 (Tex. App.–Dallas 1999, no pet.). 
Both doctors provided evidence showing that E.B. was mentally ill.  Rodriguez stated that E.B. told him he was an
athlete, a genius, and royalty. 
According to Rodriguez, E.B. was hypertalkative and his speech was rapid
and pressured.  Rodriguez reported that
E.B. exhibited flight of ideas, looseness of association, grandiose as well as
paranoid delusional beliefs, and was verbally aggressive and threatening.  Thompson stated that E.B. talked loudly,
rapidly, and constantly, with rapid shift of topics.  According to Thompson, E.B. bowed as he
entered and left and had coated himself with an excessive amount of greasy
substance.  Evidence of continuing
delusional or paranoid behavior merely reflects that an individual is mentally
ill and in need of hospitalization, but does not provide the continuing pattern
of behavior necessary to support a commitment. 
See In re C.O., 65 S.W.3d at 182; Broussard
v. State, 827 S.W.2d 619, 622 (Tex. App.–Corpus Christi 1992, no writ).


            An
expert opinion recommending commitment must be supported by the factual bases
on which it is grounded and not simply recite the statutory criteria.  See J.M. v. State, 178 S.W.3d
185, 193 (Tex. App.–Houston [1st Dist.] 2005, no pet.).  What is necessary is the expert’s description
of the patient’s specific behaviors on which his or her opinion is based.  See id.  No doctor provided evidence of an overt act
and there is no evidence in the record of an overt act.  In fact, Rodriguez pointed out that, while
E.B. had expressed some verbal aggression, he never exhibited physical
aggression or threatened to harm himself or others.  As such, we must examine the record to
determine where there is clear and convincing evidence showing a continuing
pattern of behavior that tended to confirm his distress and the deterioration
of his ability to function.  See Tex. Health & Safety Code Ann. §
574.034(d). 

            Rodriguez
admitted that E.B.’s disorder tended to be cyclic, or bipolar.  He also suspected that E.B. did not take his
medication at some point during his treatment at the Hospital.  At that time, E.B. became verbally
aggressive.  However, on the Thursday
before the hearing, Rodriguez admitted that E.B. made an informed decision to
take a different medication.  As a
result, E.B. acted as though he felt better and remarked that the medicine was
good.  Rodriguez admitted that E.B.’s
clinical condition was changing and improving, although not completely
remitted.  Rodriguez offered no evidence
that, at the time of trial, E.B. exhibited a continuing pattern of behavior
that tended to confirm his distress and a deterioration of his ability to
function.  See Tex. Health & Safety Code Ann. §
574.034(d).  In fact, from this evidence,
E.B.’s behavior and actions showed that he was able to make a rational and
informed decision as to whether or not to submit to treatment.  See Tex.
Health & Safety Code Ann. § 574.034(a)(2)(C)(iii). 

            Regarding
E.B.’s ability to succeed outside the Hospital, Rodriguez was concerned about
E.B.’s behavior.  However, his testimony
was about how the community viewed E.B.’s behavior and its results, not whether
E.B.’s behavior indicated his distress or a deterioration of his ability to
function.  Rodriguez offered no evidence
to show that E.B. was unable to function independently because of his behavior
in the community or that his pattern of behavior demonstrated his distress and
a deterioration of his ability to function. 
See Tex. Health &
Safety Code Ann. § 574.034(d). As such, there was no testimony or
evidence that E.B. was unable to provide for his basic needs, including food,
clothing, health, or safety.  See Tex. Health & Safety Code Ann. § 574.034(a)(2)(C)(ii).


            In
summary, the State failed to introduce clear and convincing evidence of a
continuing pattern of behavior that tended to confirm E.B.’s distress and the
deterioration of his ability to function. 
See Tex. Health &
Safety Code Ann. § 574.034(d). 
Therefore, viewing the evidence in the light most favorable to the findings,
we conclude a reasonable trier of fact could not have formed a firm belief or
conviction that E.B. was suffering severe and abnormal mental, emotional, or
physical distress, was experiencing substantial mental or physical
deterioration of his ability to function independently, and was unable to make
a rational and informed decision as to whether or not to submit to treatment.  See Tex.
Health & Safety Code Ann. § 574.034(a), (d); In re J.F.C.,
96 S.W.3d at 266.  Consequently, the
evidence is legally insufficient to support the trial court’s finding based
upon section 574.034(d) of the Texas Health & Safety Code.  Having determined that the evidence is
legally insufficient, it is unnecessary for us to address E.B.’s argument that
the evidence is factually insufficient to support the trial court’s
finding.  See Tex. R. App. P. 47.1.

 

Conclusion

            Based upon
our review of the record, we conclude that the evidence is legally insufficient
to support the trial court’s order of commitment for temporary inpatient mental
health services.  We reverse
the trial court’s order of commitment for temporary inpatient mental health
services and render judgment denying the State’s application for
court ordered temporary mental health services.

 

 

                                                                                                    SAM GRIFFITH   

                                                                                                               Justice

 

 

Opinion delivered August 16,
2006.

Panel consisted of Worthen,
C.J. and Griffith, J.

 

 

 

 

 

 

 

 

 

 

 

 

 

 

 

 

 

 

 

 

 

 

 

 

 

(PUBLISH)