NO. 12-01-00145-CV



IN THE COURT OF APPEALS
 


TWELFTH COURT OF APPEALS DISTRICT



TYLER, TEXAS


§
 APPEAL FROM THE 


THE STATE OF TEXAS

FOR THE BEST INTEREST
§
 COUNTY COURT AT LAW

AND PROTECTION OF C.O.


§
 CHEROKEE COUNTY, TEXAS

 

 Appellant C.O. ("C.O.") appeals from a judgment ordering his commitment for temporary
inpatient mental health services pursuant to Tex. Health & Safety Code Ann. § 574.034 (Vernon
Supp. 2001). After a hearing without a jury, the trial court ordered C.O. committed to Rusk State
Hospital for a period not to exceed ninety days. (1) In six points of error, Appellant challenges the legal
and factual sufficiency of the evidence and raises various constitutional issues. We reverse and
render.


Background


 On April 16, 2001, a social worker at Rusk State Hospital filed an Application for Court-Ordered Temporary Mental Health Services. The application stated that C.O. was mentally ill and
that he met the criteria in section 574.034 of the Texas Mental Health Code for court-ordered
temporary mental health services. At the time the application was filed, C.O. was a patient at Rusk
State Hospital, and the applicant was a member of his treatment team. 

 The hearing on the application was held on April 24, 2001. At the conclusion of the hearing,
the trial court found that C.O. was mentally ill and that he met at least one of the three additional
criteria for commitment listed in the order. (2) However, the judgment does not specify which criterion
formed the basis for the decision, and no findings of fact and conclusions of law were requested or 
filed. (3)


Burden of Proof and Standard of Review


 Section 574.034 of the Texas Health & Safety Code contains the criteria for court-ordered
temporary inpatient mental health services. The court may order a proposed patient to receive
temporary inpatient mental health services only if the fact finder concludes from clear and
convincing evidence that the proposed patient is mentally ill and also meets at least one of the
additional criteria set forth in section 574.034(a)(2). Specifically, subsection (a)(2) provides the
factfinder must conclude that as a result of mental illness, the proposed patient:


 (A) is likely to cause serious harm to himself;

 (B) is likely to cause serious harm to others; or

 (C) is:



 suffering severe and abnormal mental, emotional, or physical distress;

 experiencing substantial mental or physical deterioration of the proposed
patient's ability to function independently, which is exhibited by the
proposed patient's inability, except for reasons of indigence, to provide for
the proposed patient's basic needs, including food, clothing, health, or
safety; and



 (iii) unable to make a rational and informed decision as to whether or not to submit to treatment.


Tex. Health & Safety Code Ann. § 574.034(a)(2) (Vernon Supp. 2001). 

 The State has the burden of establishing by clear and convincing evidence that the proposed
patient meets at least one of the additional criteria listed in section 574.034(a)(2) ("additional
criteria"). Mezick v. State, 920 S.W.2d 427, 430 (Tex. App.-Houston [1st Dist.] 1996, no writ). 
The Texas Supreme Court has defined "clear and convincing evidence" as "that degree of proof
which will produce in the mind of the trier of fact a firm belief or conviction as to the truth of the
allegations sought to be established." State v. Addington, 588 S.W.2d 569, 570 (Tex. 1979)(per
curiam). When court-ordered temporary mental health services are sought, an additional requirement
is imposed.


 To be clear and convincing under Subsection (a), the evidence must include expert testimony and,
unless waived, evidence of a recent overt act or a continuing pattern of behavior that tends to confirm:


 (1) the likelihood of serious harm to the proposed patient or others; or



 the proposed patient's distress and the deterioration of the proposed patient's ability
to function.




Tex. Health & Safety Code Ann. § 574.034(d) (Vernon Supp. 2001).

 "Clear and convincing evidence" is an intermediate standard, falling between the
preponderance of the evidence standard of ordinary civil proceedings and the reasonable doubt
standard of criminal proceedings. Id. However, the clear and convincing standard does not alter the
appropriate standard of review. Trimble v. Texas Dep't of Protective and Regulatory Servs., 981
S.W.2d 211 (Tex. App.-Houston [14th Dist.] 1998, no pet.). 

 C.O. contends the State's evidence is legally and factually insufficient to support a finding
that he meets any of the three criteria for a temporary commitment as set forth in section
574.034(a)(2). In reviewing a legal sufficiency or no evidence complaint, the appellate court must
consider only the evidence and inferences that tend to support the challenged findings and disregard
all evidence and inferences to the contrary. Holt Atherton Industries, Inc. v. Heine, 835 S.W.2d
80, 84 (Tex. 1992). If there is more than a scintilla of evidence to support the findings, the no
evidence challenge fails. Id. In the context of the State's heightened burden of proof in a temporary
commitment case, a no evidence challenge will be sustained if the evidence is insufficient to produce
in the mind of the fact finder a firm belief or conviction as to the truth of the facts. In re Breeden,
4 S.W.3d 782, 785 (Tex. App.-San Antonio 1999, no writ); Johnstone v. State, 961 S.W.2d 385,
388 (Tex. App.-Houston [1st Dist.] 1997, no writ). 

 In reviewing the factual sufficiency of the evidence, the appellate court considers all the
evidence and will set aside the judgment only if it is so contrary to the overwhelming weight of the
evidence that it is clearly wrong and manifestly unjust. Garza v. Alviar, 395 S.W.2d 821, 823 (Tex.
1965). Without findings of fact and conclusions of law, the reviewing court must presume that the
trial court resolved all questions of fact in support of the judgment. Holt Atherton Industries, 835
S.W.2d at 83.


Evidence


 At the commitment hearing, the State presented a Physician's Certificate of Medical
Examination for Mental Illness completed by Dr. Harry Thompson ("Thompson") and a second
Certificate completed by Dr. David Self ("Self"). No medical records were introduced. Thompson's
Certificate stated that C.O. suffered from "schizophrenia, paranoid type, continuous, with prominent
negative symptoms" and that he met all of the additional criteria for temporary court-ordered mental
health services. 

 As the basis for his opinion, Thompson described excerpts from a conversation he had with
C.O. on April 9, 2001 in which C.O. claimed to be an angel. At that time, C.O. also said he had been
"visited by covert beings who talk to me" and that he "had been victimized by Communists,
Germans, possibly Catholics, and Jews." Thompson further noted that C.O. had written a letter to
country western singer Trisha Yearwood in which he claimed to be the father of her child ("the
Yearwood letter"). No act other than the Yearwood letter was noted in the Certificate.

 Self diagnosed C.O. as "schizoaffective D/O-Depressed," but concluded that he met only two
of the additional criteria. He did not agree that C.O. was likely to cause serious harm to others and
stated that C.O.'s harm to himself would be "in severely impaired judgment." As the basis for his
opinion, Self noted several delusional statements made by C.O. such as "I was sexually molested to
steal my genes" and "Police document me to be a paranormal." Self stated that C.O. had no
behavioral problems and did not note any specific acts of C.O. that formed the basis for his opinion.

 Thompson and C.O. were the only witnesses who testified at the hearing. During direct
examination, Thompson confirmed his diagnosis of C.O. as stated in his Physician's Certificate. He
testified that C.O. was likely to cause serious harm to himself through "deterioration of psychosis
with impaired reality testing and impaired judgment" and that there was a "concern" the "likelihood
exists" that C.O. would cause serious harm to others. Thompson further testified that C.O. was
suffering severe and abnormal mental, emotional, or physical distress; that he was experiencing
substantial mental or physical deterioration of his ability to function independently; and that he was
unable to make a rational and informed decision about whether to submit to treatment. 

 In response to a question about C.O.'s pattern of behavior, Thompson related that upon
C.O.'s arrival, "there was an idea that he had sex and used a condom and a cop used the semen to
impregnate many celebrities." Later in his testimony, Thompson described C.O. as "loud, angry,
grandiose" and as someone who speaks "reasonably in tact" for only a few minutes and then talks
about "delusional material." He testified that C.O.'s delusions consisted of "numerous bizarre ideas,
themes of persecution by government, police, and church, and electronic surveillance." As
examples, Thompson testified that C.O. said "he has been documented as a paranormal in
Washington D.C." and that he also claims to be a "national hero" and "sacred." Thompson further
stated the delusions were "fixed and entrenched," which prompted him to increase the dosage of
C.O.'s medication.

 Thompson also testified that he requested the temporary commitment because C.O. had been
writing "long letters," which he characterized as a more recent pattern of behavior, and he
specifically mentioned the Yearwood letter. (4) He further stated that Ms. Yearwood's security agency
had called and expressed concern about the letter. (5) According to Thompson, C.O.'s commitment
would allow him to be monitored following the increase in the dosage of his medication and provide
an opportunity for those working with C.O. to evaluate any "possibility" or "likelihood of his acting
on his delusions when writing letters." 

 On cross-examination, Thompson described schizophrenia, paranoid type as a major
psychotic state characterized by "impairment of reality testing, with delusions, often hallucinations."
Other characteristics, called "negative symptoms," include "low volition and impaired drive and
socialization skills, self care skills." Thompson testified that he knew of no incidents in which C.O.
heard voices or experienced hallucinations and did not state that C.O.'s behavior included any of the
negative symptoms of his illness. Thompson also testified he had no knowledge of any overt act
during C.O.'s current admission that showed C.O. was likely to cause serious harm to himself or
anyone else, but identified danger to self and others as a "target issue."

 Thompson testified that C.O. was able to feed and dress himself, tell time, and take care of
his personal hygiene. He also stated that "impairment or lack of ambition in self care" had been a
problem for C.O. in the past, but was not a problem on the date of the hearing. According to
Thompson, C.O. could understand what was said to him and carry on a job, but could not survive
safely in freedom even with the help of willing and responsible family members or friends. In
Thompson's opinion, C.O. was not approaching discharge readiness.

 Most of C.O.'s testimony was rambling, and his answers were generally nonresponsive. He
did testify, however, that he planned to live with a friend in LaPorte when he was released and that
he would take his medication. He also testified he would have an income source in LaPorte.


Legal Sufficiency of the Evidence


 The evidentiary standards for involuntary commitment for treatment of mental illness are
high. Harris v. State, 615 S.W.2d 330, 333 (Tex. Civ. App.-Fort Worth 1981, writ ref'd n.r.e.). 
Expert testimony is essential, Tex. Health & Safety Code Ann. § 574.034(d) (Vernon Supp.
2001), but expert diagnosis alone is not sufficient to confine a patient for compulsory treatment. 
Mezick, 920 S.W.2d at 430. The State cannot meet its burden of proof without presenting evidence
of the behavior of the proposed patient that provides the factual basis for the expert opinion. Id. 

 Evidence that an individual is mentally ill and in need of hospitalization is no evidence that
the statutory standard has been met. In re P.W., 801 S.W.2d 1, 3 (Tex. App.-Fort Worth 1990, writ
denied). To be clear and convincing, the evidence must show a recent overt act or a continuing
pattern of behavior that tends to confirm the proposed patient is likely to seriously harm himself or
others or that his ability to function is deteriorating because of his distress. Tex. Health & Safety
Code Ann. § 574.034(d) (Vernon Supp. 2001). The recent overt act or continuing pattern of
behavior shown by the State must also relate to the criterion on which the judgment is based. See,
e.g., T.G. v. State, 7 S.W.3d 248, 252 (Tex. App.-Dallas 1999, no pet.); In re Breeden, 4 S.W.3d
at 788. C.O. contends the evidence is legally and factually insufficient to establish any of the
additional criteria for commitment because the State failed to show any recent overt act or continuing
pattern of behavior as required by section 574.034(d). 

Recent overt act

 At the commitment hearing, Thompson testified he knew of no overt act that indicated C.O.
was likely to cause serious harm to himself or to others. The Yearwood letter, which is the only
overt act described in the evidence, relates to the likelihood that C.O. will cause serious harm to
others. Thompson cited the letter, both in his Physician's Certificate and in his testimony, as his
reason for requesting the commitment and also noted the concern voiced by Ms. Yearwood's security
agent. 

 Although Thompson stated in his Physician's Certificate that C.O. was likely to cause serious
harm to others, his testimony at the hearing was less definite. When asked whether C.O. was likely
to cause serious harm to others, Thompson stated that was a "concern" and also testified the
commitment would provide an opportunity for evaluating any "possibility" or "likelihood" that C.O.
might act on any of the delusions he experienced when writing letters. However, Thompson did not
testify that C.O. was "likely" to cause serious harm to others and did not state any facts that would
justify such a conclusion. Thompson also failed to state any factual basis for his opinion that the
letter was a cause for concern, and the letter itself does not contain any threats, references to
violence, or indications of likely harm to anyone.

 The substance of Thompson's testimony is that the Yearwood letter raised a concern that
C.O. may cause serious harm to others, but without further evaluation, he cannot say C.O. is likely 
to do so. Bare psychiatric expert opinion of a potential danger to others is insufficient to support a
commitment. Broussard v. State, 827 S.W.2d 619, 622 (Tex. App.-Corpus Christi 1992, no writ).
Neither Thompson's testimony nor the Yearwood letter provide any factual basis for a conclusion
that C.O. was likely to cause serious harm to others, and therefore the letter is not a sufficient overt
act to justify C.O.'s commitment.


Continuing pattern of behavior

 When asked about C.O.'s patterns of behavior, Thompson testified that C.O. was delusional
as well as "loud, angry, grandiose." However, evidence of continuing delusional behavior, hostile
behavior, and provocative statements to others, without more, merely reflects that an individual is
mentally ill and in need of hospitalization, but does not provide the continuing pattern of behavior
necessary to support a commitment. Broussard, 827 S.W.2d at 622. 

 Thompson did not state any facts to support his conclusion that C.O.'s delusional state
created a likelihood of serious harm, either to C.O. or to others. Thompson and Self each concluded
that C.O. would cause serious harm to himself through impaired judgment, but neither doctor noted
any present impairment, stated the factual basis for his concern, or explained the nature of the
anticipated impairment and the resulting harm to C.O. In addition, Thompson testified that C.O.
could perform basic functions such as feeding and dressing himself, taking care of his personal
hygiene, and carrying on a job, which foreclosed any conclusion that C.O.'s delusions were causing
deterioration in his ability to function independently. Because C.O.'s delusions do not tend to
confirm the existence of any of the additional criteria, they do not constitute evidence of a continuing
pattern of behavior that supports his commitment.

 Thompson also identified C.O.'s letter writing as an additional pattern of behavior, but his
testimony relates to the contents of the Yearwood letter only. No other letters were introduced, and
Thompson did not describe the contents of any other letter that C.O. had written. Therefore, his
reference to other letters is no evidence of a continuing pattern of behavior.


Conclusion


 The statutory requirements for an involuntary commitment are strict because an involuntary
commitment is a drastic measure. In re Breeden, 4 S.W.3d at 789. To justify depriving an
individual of his liberty, more than "potential" harm is necessary. In re P.W., 801 S.W.2d at 3. 

 Although no bright-line test has been formulated for determining what evidence will establish
the requisite overt act or continuing pattern of behavior, Texas courts universally hold that the State
must show more than delusions, angry or psychotic behavior, or other facts that merely confirm
mental illness. See, e.g., Johnstone, 961 S.W.2d at 389 (auditory hallucinations; disorganized,
paranoid thinking; and repeated refusal to take medication insufficient); Broussard, 827 S.W.2d at
622 (six or seven prior hospitalizations, psychotic and hostile behavior, and repeated refusals to take
medication insufficient); In re P.W., 801 S.W.2d at 3 (delusional behavior, questions about suicide,
and destruction of own personal property insufficient). To meet the evidentiary standard for a
temporary commitment, the evidence offered at the hearing must show that hospitalization is
necessary for the protection and welfare of the proposed patient or the protection of others. Harris,
615 S.W.2d at 333; Lodge, 597 S.W.2d at 779. (6)

 Based upon our review of the evidence at the commitment hearing, we conclude the State
did not present clear and convincing evidence of a recent overt act or a continuing pattern of
behavior that tends to confirm C.O. was likely to cause serious harm to himself or others or that his
ability to function was deteriorating because of his distress. Because we sustain C.O.'s challenge
to the legal sufficiency of the evidence, we do not address the other issues raised on appeal.

 The judgment of the trial court is reversed, and judgment is rendered denying the State's
petition for temporary court-ordered mental health services.



 JIM WORTHEN 

 Justice



Opinion delivered September 19, 2001.

Panel consisted of Davis, C.J., Worthen, J., and Griffith, J.



(PUBLISH)
1. The ninety-day commitment period has expired, but this appeal is not moot. In State v. Lodge, 608 S.W.2d
910, 911 (Tex. 1980), the Texas Supreme Court held that the doctrine of mootness does not apply to appeals from
involuntary commitments.
2. The additional criteria listed in the order are the same as those specified in Tex. Health & Safety Code
Ann. § 574.034(a)(2) (Vernon Supp. 2001).
3. C.O. does not question whether the language of the judgment is sufficient to comply with Tex. Health &
Safety Code Ann. § 574.034(a)(2) (Vernon Supp. 2001), which provides that the judge or jury must specify the
commitment criterion that forms the basis for the decision.

4. In the Yearwood letter, which was five handwritten pages, C.O. wrote, "I'm not going to be scary in any way
to you, but my story is alarming." He then proceeds to tell Ms. Yearwood that she is the mother of at least two of his
children and makes a series of rambling statements that reflect his delusional state. 
5. Thompson also mentioned a letter C.O. wrote to a social worker who was in contact with him during his last
admission, but did not describe its contents. The letter is not part of the record.
6. For examples of cases in which the State introduced legally sufficient evidence to establish at least one of the
three criteria for commitment, see, e.g., Goldwait v. State, 961 S.W.2d 432 (Tex. App.-Houston [1st Dist.] 1997, no
writ)(appellant appeared tired, requested suction supplies to "let" his blood, and jumped out of a moving bus); Mezick
v. State, 920 S.W.2d 427 (Tex. App.-Houston [1st Dist.] 1996, no writ)(appellant refused all medication, did not believe
he was ill, and lost thirty pounds in three months); L.S. v. State, 867 S.W.2d 838 (Tex. App.-Austin 1993, no
writ)(appellant burned his skin with cigarettes, drank water in sufficient quantities to produce serious long-term health
consequences, and touched 9-volt batteries to the exposed roots of his teeth).