NO. 12-04-00278-CV
 
IN THE COURT OF APPEALS

TWELFTH COURT OF APPEALS DISTRICT

TYLER, TEXAS
THE STATE OF TEXAS FOR                          §                 APPEAL FROM THE 
 
THE BEST INTEREST AND                           §                 COUNTY COURT AT LAW
 
PROTECTION OF R.M.                                   §                 CHEROKEE COUNTY, TEXAS
                                                                                                                                                            
MEMORANDUM OPINION
            Appellant R.M. appeals from an order of commitment for temporary inpatient mental health
services. After a hearing without a jury, the trial court ordered R.M. committed to Rusk State
Hospital for a period not to exceed ninety days. R.M. asserts the evidence is legally and factually
insufficient to support this order. We reverse and render.
 
Background
            On August 11, 2004, the State filed an application for court-ordered temporary mental health
services requesting that the trial court commit R.M. to Rusk State Hospital for a period not to exceed
ninety days. The State supported its application with two certificates of medical examination for
mental illness. The first was prepared by Dr. S. Lahiri. Dr. Lahiri examined R.M. on August 15 and
diagnosed him as suffering from schizoaffective disorder, bipolar type. In his physician’s certificate,
Dr. Lahiri stated that R.M. is mentally ill, is likely to cause serious harm to others, and is suffering
severe and abnormal mental, emotional, or physical distress, is experiencing substantial mental or
physical deterioration of his ability to function independently, which is exhibited by his inability,
except for reasons of indigence, to provide for his basic needs, including food, clothing, health, or
safety, and is unable to make a rational and informed decision as to whether or not to submit to
treatment. Dr. Charles Plyler examined R.M. on August 12, also diagnosing R.M. with
schizoaffective disorder. In his physician’s certificate, Dr. Plyler stated he believed R.M. to be
mentally ill and likely to cause serious harm to others.
            At a hearing held on August 24, Dr. Plyler testified, first reiterating that R.M. is mentally ill,
suffering from schizoaffective disorder. Dr. Plyler stated that R.M. is likely to cause serious harm
to others, is suffering severe and abnormal mental, emotional or physical distress that would make
him incapable of functioning independently outside the hospital, and is unable to make a rational and
informed decision as to whether or not to submit to treatment. Dr. Plyler based his opinion on
R.M.’s extensive delusional system. R.M. believes that he is a secret agent for the federal
government, that he was somehow involved in the 9/11 event, that he is currently on active
employment by secret government agencies, and is actively involved in observing terrorist activities. 
 R.M. is reluctant to explain the exact nature of his duties. 
            Upon admission to the hospital, R.M. was given Haldol injections. He was originally
agitated, but has since been under control. Dr. Plyler stated he believed R.M.’s delusions interfere
with his self-care. The doctor stated that Rusk State Hospital is the least restrictive environment
available.
             On cross examination, Dr. Plyler conceded that he checked only the second prong on his 
physician’s certificate – that R.M. is likely to cause serious harm to others. Dr. Plyler found no
record of emergency injections to R.M., nor was he aware of any recent overt act by R.M. that would
indicate his likelihood to cause serious harm to others. The doctor stated that R.M. is able to feed
and dress himself, is able to take care of his personal hygiene, and has consented to take the three
classes of medications the hospital prescribed. Dr. Plyler conceded that R.M. has the capacity and
rationality to make an informed and rational decision as to whether or not to submit to medication
treatment. Dr. Plyler was unable to say that R.M. would be able to take care of his personal safety.
            R.M. testified on his own behalf. He first explained that when he made the statement that
he was an agent for the government, he was incoherent at the time. At the hearing, he denied being
an agent for the government. He did, however, state that if he ever noticed anything “unkosher,” he
would communicate that to the White House. Although he did not receive responses from the White
House, he stated he gets his “attaboys” in other ways that he was reluctant to reveal, claiming
confidentiality. R.M. does not believe he needs further treatment and, if released, has a place to stay. 
While he admitted to not being “too good with numbers,” R.M. testified that he did household chores
and grocery shopping and stated, “I’m totally independent.” When asked what he would do if he
were in a burning building, he first said he “would be careful and not open doors or anything.” 
When asked whether he would leave or stay in the building, he replied, “It depends.” R.M. also
stated he did not want to hurt anybody or fight, describing himself as “a peaceful individual.” 
            On August 24, the trial court entered an order of temporary inpatient mental health services
after determining that the evidence supports the allegations that R.M. is mentally ill, is suffering
severe and abnormal mental, emotional, or physical distress, experiencing substantial mental or
physical deterioration of his ability to function independently, which is exhibited by his inability,
except for reasons of indigence, to provide for his basic needs, including food, clothing, health, or
safety, and is unable to make a rational and informed decision as to whether or not to submit to
treatment. The trial court ordered R.M. committed to Rusk State Hospital for a period not to exceed
ninety days. This appeal followed.
 
Sufficiency of the Evidence
            In his sole issue, R.M. asserts the evidence is neither legally nor factually sufficient to
support the order of commitment. He complains that the State did not present evidence of an overt
act or a continuing pattern of behavior to support the commitment based on the trial court’s 
findings.



Standard of Review
            In a legal sufficiency review where the burden is clear and convincing, the reviewing court
must consider all of the evidence in the light most favorable to the finding to determine whether a
reasonable trier of fact could have formed a firm belief or conviction that its finding was true. In
re J.F.C., 96 S.W.3d 256, 266 (Tex. 2002). The reviewing court must assume that the factfinder
resolved disputed facts in favor of its finding if a reasonable factfinder could do so. Id. A court
should disregard all evidence that a reasonable factfinder could have disbelieved or found to have
been incredible. Id.
            In addressing a factual sufficiency challenge, we must consider all of the evidence in the
record, both that in support of and contrary to the trial court’s findings. In re C.H., 89 S.W.3d 17,
27-29 (Tex. 2002). This court must give due consideration to evidence that the factfinder could
reasonably have found to be clear and convincing. Id. at 25. We must determine whether the
evidence is such that a factfinder could reasonably form a firm belief or conviction about the truth
of the State’s allegations. Id. We must consider whether disputed evidence is such that a reasonable
trier of fact could not have reconciled that disputed evidence in favor of its finding. In re J.F.C.,
96 S.W.3d at 266. Appellate courts retain deference for the constitutional roles of the factfinder. 
In re C.H., 89 S.W.3d at 26. The trier of fact is the exclusive judge of the credibility of the
witnesses and the weight to be given their testimony. See id. at 27; In re J.J.O., 131 S.W.3d 618,
632 (Tex. App.–Fort Worth 2004, no pet.).
Involuntary Commitment Order
            The trial judge may order a proposed patient to receive court-ordered temporary inpatient
mental health services if the judge or jury finds, from clear and convincing evidence, that the
proposed patient is mentally ill and, as a result of the mental illness he is likely to cause serious
harm to himself, is likely to cause serious harm to others, or is (1) suffering severe and abnormal
mental, emotional, or physical distress, (2) experiencing substantial mental or physical deterioration
of his ability to function independently, which is exhibited by his inability, except for reasons of
indigence, to provide for his basic needs, including food, clothing, health, or safety, and (3) unable
to make a rational and informed decision as to whether or not to submit to treatment. Tex. Health
& Safety Code Ann. § 574.034(a) (Vernon 2003). To be clear and convincing under the statute,
the evidence must include expert testimony and, unless waived, evidence of a recent overt act or a
continuing pattern of behavior that tends to confirm either the likelihood of serious harm to the
proposed patient or others or the proposed patient’s distress and the deterioration of her ability to
function. Tex. Health & Safety Code Ann. § 574.034(d) (Vernon 2003). 
            The State provided expert testimony explaining that R.M. is mentally ill. However, expert
testimony confirming mental illness, standing alone, will not support an involuntary commitment. 
 E.g., T.G. v. State, 7 S.W.3d 248, 252 (Tex. App.–Dallas 1999, no pet.). Based on the trial court’s
findings, the State must also have established evidence of a recent overt act or a continuing pattern
of behavior that tends to confirm R.M.’s distress and the deterioration of his ability to function. See 
Tex. Health & Safety Code Ann. § 574.034(d) (Vernon 2003). 
            The record reveals no overt acts or continuing pattern of behavior demonstrating a
deterioration of R.M.’s ability to function independently. The State did not offer evidence showing
that R.M. was unable to clothe, feed, or house himself, or was unable to provide for his own health. 
To the contrary, Dr. Plyler conceded that R.M. was able to clothe and feed himself. While the
evidence showed that it would depend on the circumstances as to whether R.M. would open a door
to leave a burning building, Dr. Plyler stated that R.M. was taking his medications based on his own
consent, rather than a court order. This evidence fails to establish that R.M. is unable to take care
of his basic needs or make informed decisions regarding his care. Thus, the State failed to provide
evidence of an overt act or a continuing pattern of behavior necessary to support a commitment
based on the trial court’s findings. See In re C.O., 65 S.W.3d 175, 182 (Tex. App.–Tyler 2001, no
pet.). 
            Considering all the evidence in the light most favorable to the trial court’s finding, we
conclude a reasonable trier of fact could not have formed a belief or conviction that this finding was
true. See In re J.F.C., 96 S.W.3d at 266. The evidence is not legally sufficient to support the trial
court’s order. See id. We sustain R.M.’s issue to the extent it relates to legal sufficiency of the
evidence to support the order of commitment. Therefore, we need not reach his factual sufficiency
complaint. See Tex. R. App. P. 47.1.
 
Disposition
            The evidence is legally insufficient to support the trial court’s order of commitment for
temporary inpatient mental health services. We reverse the trial court’s order of commitment for
temporary inpatient health services and render judgment denying the State’s application for court-ordered temporary inpatient mental health services.
 
 
                                                                                                    SAM GRIFFITH 
                                                                                                               Justice
 
 
 
Opinion delivered April 29, 2005.
Panel consisted of Worthen, C.J., Griffith, J., and DeVasto, J.
































(PUBLISH)