NO.
12-06-00174-CV

 

IN THE COURT OF APPEALS

 

TWELFTH COURT OF APPEALS DISTRICT

 

TYLER, TEXAS

 

§          APPEAL
FROM THE 

THE STATE OF TEXAS FOR

THE BEST INTEREST AND.         §          COUNTY
COURT OF

PROTECTION OF L.T.

§          CHEROKEE
COUNTY, TEXAS

 




 
 
 
 
 
 
 
 
 
 
 
 
 
 
 


 

 



MEMORANDUM OPINION

            L.T. appeals
from an order of commitment for temporary inpatient mental health treatment and
an order to administer psychoactive medication. 
After a jury trial, the trial court ordered L.T. committed to Rusk State
Hospital for a period not to exceed ninety days.  After a hearing before the court, the trial
court entered an order authorizing the Texas Department of Mental Health and
Mental Retardation to administer psychoactive medication to L.T.  In six issues, L.T. asserts that the evidence
is legally and factually insufficient to support the order of commitment, the
trial court violated her rights to due process and equal protection, and the
evidence is insufficient as a matter of law to support the order to administer
psychoactive medication.  We reverse and
render.

 

Background








            On
April 27, 2006, an application for court ordered temporary mental health
services was filed requesting the court commit L.T. to Rusk State Hospital for
a period not to exceed ninety days.  The
application was supported by a certificate of medical examination for mental
illness, prepared by a physician, Dr. S. Lahiri, who had examined L.T. on April
26.  Dr. Lahiri diagnosed L.T. as
suffering from schizoaffective disorder. 
He found that L.T. is mentally ill, likely to cause serious harm to
herself and others, and is suffering severe and abnormal mental, emotional, or
physical distress, is experiencing substantial mental or physical deterioration
of her ability to function independently, and is unable to make a rational and
informed decision as to whether to submit to treatment. 

            Dr.
Lahiri reached these conclusions because L.T. did not speak.  He reported that she was selectively mute,
walked in front of traffic, threatened to beat her son to drive out a demon,
exposed herself, and engaged in “bizarre behavior.”  

            On
May 4, 2006, L.T. was examined by Dr. Douglas Johnson who then also prepared a
certificate of medical examination for mental illness.  Dr. Johnson diagnosed L.T. with schizoaffective
disorder, bipolar type.  He indicated
that L.T. is mentally ill, is likely to cause serious harm to herself, and is
suffering severe and abnormal mental, emotional, or physical distress, is
experiencing substantial mental or physical deterioration of her ability to
function independently, and is unable to make a rational and informed decision
as to whether to submit to treatment. 
The doctor came to these conclusions because L.T. refused to speak on
April 26 and on May 4 she said, “I am physically perfect, psychologically
perfect.”  Prior to April 26, she had
been exposing herself in public, yelling, shouting, and walking in the middle
of traffic, and she had threatened to beat her son.  On April 26, she was brought to Rusk State
Hospital in a straight jacket and refused to talk or open her eyes.  

            The
two physician’s certificates were placed into evidence at trial.  However, the trial court sustained L.T.’s
objection to the portions of each certificate describing L.T.’s
prehospitalization behavior and instructed the jury that they were not to
consider the statements concerning that behavior as being established as true.

            Dr.
Johnson testified at the trial, first restating his diagnosis that L.T. is
suffering from schizoaffective disorder, bipolar type.  He explained that L.T. refused to attend a
May 4 treatment team meeting, she walked around with her eyes nearly closed,
and she told Dr. Johnson that she had nothing to say.  She claimed that she was perfect, psychiatrically,
physically, and in every other way, and would not communicate further.  Dr. Johnson saw her several times between the
date of her admission and the date of trial. 
But she refused to go to his office for private conversations and she
never spoke to him after telling him she had nothing to say.  Until the last several days before the trial,
L.T. spent her time walking around bumping into things or sitting around with
her eyes mostly closed, claiming that she was blind.  She required assistance to deal with her
personal needs because she claimed she was blind.  She would get very angry if the nurses
suggested she open her eyes.  She was
very demanding with the nursing staff, at times creating a disturbance by yelling
and making verbal threats.  On two
occasions, one of which was nine days before the trial, she had to be medicated
on an emergency basis because she was very agitated, loud, and disruptive, and
made verbal threats against people, including the nursing staff.  

            Dr.
Johnson explained that L.T. is not aware enough, able to concentrate enough,
and does not have enough insight to be able to recognize side effects of the
medicine and report them back to the physician. 
Only emergency medications have been prescribed because L.T. has
consistently refused to consider consent to medications.  The doctor explained that L.T. takes a
medication for hyperlipidemia to help correct cholesterol and blood lipid
abnormalities.  While her condition has
changed since admission to the hospital, he does not know how much her illness
has remitted because she will not communicate. 
She needs psychotropic medications, and Rusk State Hospital is the least
restrictive environment appropriate for her.

            The
doctor testified that L.T.’s activities demonstrate severe and abnormal mental,
emotional, or physical distress, and he believes she is experiencing
substantial mental or physical deterioration of her ability to function
independently.  He had made this
determination on May 4 and documented it on his certificate.  At that time he had also determined that she
was unable to make a rational and informed decision as to whether to submit to
treatment.  Since May 15, when she began
keeping her eyes open, she has been able to take care of her personal needs
without assistance.  However, Dr. Johnson
explained that he had no evidence that she has reached a therapeutic level
where she would be able to take care of herself out in the community.  Again, she will not communicate or cooperate
with an evaluation.  Likewise, he did not
have sufficient information at the time of the trial to overturn his initial
opinion that it was likely she could cause serious harm to herself or that she
is suffering severe and abnormal distress, experiencing substantial
deterioration, or unable to make a rational decision about submitting to
treatment.

            Dr.
Johnson testified that L.T. exhibited a continuing pattern of behavior for the
time she was in the hospital, almost three weeks.  That behavior included being very intrusive
into others’ affairs, banging on the glass at the nurses station, and making
demands and threats.

            On
cross examination, Dr. Johnson explained that while he was not the physician
who prescribed the medicine to adjust her cholesterol levels, L.T. is
voluntarily taking it.  He agreed that
she has improved since being at the hospital and she behaved appropriately
during the trial.  She has not attempted
to hurt herself and she does not require assistance or prompting to dress or
feed herself.  He also agreed that by
consenting to her medical treatment and taking her “medical medication,” it
appears she has some capacity to make a decision regarding her medical
treatment.  The doctor believes that if
L.T. were in a burning building, she would know to leave it and if on a picnic,
she would know not to sit on a fire ant mound. 
Further, if she had a broken arm, she would know to go to a doctor for
treatment.  In speaking to L.T. about
medication, she either said “no” or refused to answer.

            Dr.
Johnson explained that L.T. made allegations that she had been physically
abused, but she would not allow him to examine her.  The doctor had no knowledge of L.T.
assaulting anyone.  He testified that
there is a good likelihood that she is not a danger to herself or others, but
she has never allowed adequate evaluation.

            On
redirect, the doctor explained that he wants to make sure L.T. is in a “reasonable
remission.”  He stated that people with
schizoaffective disorder of the bipolar type do dangerous things to themselves
and other people.  While L.T. has
improved, if she does not improve completely, she will go back to behavior that
is dangerous.  If it is determined that
she needs medication, and she takes it, she will respond in ten to fourteen
days.  She could be discharged two or
three days after achieving a good state of remission.

            The
jury found that L.T. is mentally ill and that, as a result of mental illness,
she is suffering severe and abnormal mental, emotional, or physical distress,
is experiencing substantial mental or physical deterioration of her ability to
function independently, and is unable to make a rational and informed decision
as to whether to submit to treatment.  In
accordance with the jury findings, the trial court entered an order requiring
L.T. to submit to temporary inpatient mental health services for a period not
to exceed ninety days.

            After
the jury was dismissed, the trial court heard testimony from Dr. Johnson and
L.T. concerning Dr. Lahiri’s application for court ordered authorization for
the administration of psychoactive medication. 
The trial court granted the application and entered an order to
administer psychoactive medication for the period of temporary commitment.  

            

Commitment
Order

            In
her first issue, L.T. asserts the evidence is neither legally nor factually
sufficient to support the order of commitment. 
She contends that the evidence does not show an overt act or continuing
pattern of behavior tending to confirm that she is unable to provide for her
basic needs.

Standard of Review

            In
a legal sufficiency review where the burden of proof is clear and convincing
evidence, the reviewing court must consider all of the evidence in the light
most favorable to the finding to determine whether a reasonable trier of fact
could have formed a firm belief or conviction that its finding was true.  In re J.F.C., 96 S.W.3d 256,
266 (Tex. 2002).  The reviewing court
must assume that the factfinder resolved disputed facts in favor of its finding
if a reasonable factfinder could do so.  Id.  A court should disregard all evidence that a
reasonable factfinder could have disbelieved or found to have been
incredible.  Id. 

Applicable Law 

            The
trial judge may order a proposed patient to receive court ordered temporary
inpatient mental health services if the judge or jury finds, from clear and
convincing evidence, that the proposed patient is mentally ill and, as a result
of the mental illness she is likely to cause serious harm to herself, is likely
to cause serious harm to others, or is (i) suffering severe and abnormal
mental, emotional, or physical distress, (ii) experiencing substantial mental
or physical deterioration of her ability to function independently, which is
exhibited by her inability, except for reasons of indigence, to provide for her
basic needs, including food, clothing, health, or safety, and (iii) unable to
make a rational and informed decision as to whether or not to submit to
treatment.  Tex. Health & Safety Code Ann. § 574.034(a) (Vernon
2003).  To be clear and convincing under
the statute, the evidence must include expert testimony and, unless waived,
evidence of a recent overt act or a continuing pattern of behavior that tends
to confirm either the likelihood of serious harm to the proposed patient or
others, or the proposed patient’s distress and the deterioration of his ability
to function.  Tex. Health & Safety Code Ann. § 574.034(d) (Vernon
2003).

Discussion

            The
State provided expert testimony explaining that L.T. is mentally ill and
describing her behavior and statements. 
The evidence shows L.T. was selectively mute, and for over two weeks while
at the hospital, she kept her eyes closed and claimed to be blind.  While her eyes were closed, she needed
assistance in taking care of her personal needs.  Before trial, she stopped keeping her eyes
closed and no longer required assistance or prompting to dress or feed
herself.  At times, she was angry, loud,
demanding, disruptive, and agitated, and yelled verbal threats.  Dr. Johnson specifically testified that the
pattern of behavior she exhibited involved being intrusive into the affairs of
other people, banging on the glass at the nurse’s station, and making demands
and threats.  Even assuming this
constitutes a pattern of behavior for purposes of the applicable statute, none
of these behaviors indicate an inability to function independently exhibited by
her inability to provide for her own basic needs.  The pattern of behavior must relate to the
criterion on which the judgment is based. 
See In re C.O., 65 S.W.3d 175, 181 (Tex. App.–Tyler 2001,
no pet.).  

            We
conclude there is no evidence of an overt act or continuing pattern of behavior
that tends to confirm the deterioration of L.T.’s ability to function.  The evidence presented does not satisfy the
statutory requirement for clear and convincing evidence in support of the order
for temporary inpatient mental health services. 
See Tex. Health &
Safety Code Ann. § 574.034(d). 
The evidence is legally insufficient to support the trial court’s
order.  See In re J.F.C.,
96 S.W.3d at 266.  We sustain L.T.’s
first issue to the extent she complains of the legal sufficiency of the
evidence.  We need not reach her factual
sufficiency complaint.  See Tex. R. App. P. 47.1. 

 

Psychoactive
Medication

            In
her sixth issue, L.T. contends the order authorizing administration of
psychoactive medication cannot stand.  We
agree.

            The court may enter an order
authorizing the administration of psychoactive medication to a patient who is
under an order to receive inpatient mental health services if it finds by clear
and convincing evidence that the patient lacks the capacity to make a decision
regarding the administration of the proposed medication and treatment with the
proposed medication is in the best interest of the patient.  Tex.
Health & Safety Code Ann. § 574.106(a), (a-1) (Vernon Supp.
2006).  Having found the evidence legally
insufficient to support the trial court’s order of commitment, we have
determined that the trial court’s order for temporary mental commitment is
invalid.  Therefore, the order authorizing
administration of psychoactive medication is also invalid.  See Tex.
Health & Safety Code Ann. § 574.106(a).  We sustain L.T.’s sixth issue.

 

Conclusion

            The
evidence is legally insufficient to support the trial court’s order of
commitment for temporary inpatient mental health services.  It follows that the order for administration
of psychoactive medication is invalid. 
We need not reach L.T.’s remaining issues.  See Tex.
R. App. P. 47.1.

            We
reverse the trial court’s orders of commitment for temporary
inpatient mental health services and for administration of psychoactive
medication.  We render
judgment denying the State’s applications for court ordered temporary mental
health services and administration of psychoactive medication.

 

                                                                                                     JAMES T. WORTHEN    

                                                                                                                 Chief Justice

 

 

Opinion
delivered February 9, 2007.

Panel consisted of Worthen,
C.J., Griffith, J., and Hoyle, J.

 

 

 

 

 

 

 

 

 

 

 

 

 

 

 

(PUBLISH)