# NO. 12-13-00113-CV

# IN THE COURT OF APPEALS

# TWELFTH COURT OF APPEALS DISTRICT

# TYLER, TEXAS

| | | |
|---|---|---|
| *THE STATE OF TEXAS FOR* | § | *APPEAL FROM THE* |
| *THE BEST INTEREST AND* | § | *COUNTY COURT AT LAW* |
| *PROTECTION OF H.M.R.* | § | *CHEROKEE COUNTY, TEXAS* |

## *MEMORANDUM OPINION*

H.M.R. appeals from the trial court's order for extended inpatient mental health services. In one issue, he argues that the evidence is legally insufficient to support the trial court's order. We reverse and render.

## BACKGROUND

On April 1, 2013, an application for court ordered extended mental health services was filed requesting the trial court to commit H.M.R. to the Rusk State Hospital (the Hospital) for a period not to exceed twelve months. At the time the application was filed, H.M.R. was a patient at the hospital. The application was supported by two physician's certificates of medical examination for mental illness.

On March 28, 2013, George Howland, M.D. evaluated and examined H.M.R. and diagnosed him with schizophrenia paranoid type, polysubstance dependence, and depressive disorder not otherwise specified (nos). According to Howland, H.M.R. had been under his care for one year. He stated that on March 8, H.M.R. believed "gay black Russians" were trying to do things to him. On March 22, H.M.R. told Howland that he felt the Russians make him choke and "control[ed]it." Later, on March 28, H.M.R. stated that he had parasites, that "gay Russians did it," that he experienced shortness of breath, and that he did not want the heart procedure. According to Howland, H.M.R. had no insight into his mental illness, and that his condition was expected to continue for more than ninety days because he had no insight into his mental illness

and was psychotic. Finally, Howland stated that H.M.R. was mentally ill, and that as a result of that mental illness was likely to cause serious harm to others, was suffering severe and abnormal mental, emotional or physical distress, was experiencing substantial mental or physical deterioration of his ability to function independently, and was unable to make a rational and informed decision about whether to submit to treatment.

On April 1, 2013, Joe Bates, M.D. evaluated and examined H.M.R. and diagnosed him with schizophrenia. On that date, H.M.R. told Bates that the "Russians" were making themselves a part of his body and choked him, causing him to vomit. Bates also stated that H.M.R. was experiencing paranoid delusions. Bates stated further that H.M.R. had poor insight and judgment, and expressed disappointment at "how far they let the Russians go." Finally, Bates stated that H.M.R. was mentally ill, and that as a result of that mental illness was suffering severe and abnormal mental, emotional or physical distress, was experiencing substantial mental or physical deterioration of his ability to function independently, and was unable to make a rational and informed decision as to whether or not to submit to treatment.

On April 2, 2013, the trial court heard the State's application for court ordered extended mental health services. At the conclusion of the hearing, the trial court granted the application. On the same date, the trial court signed an order for extended mental inpatient mental health services. The trial court found by clear and convincing evidence that H.M.R. was mentally ill and as a result of that mental illness was likely to cause serious harm to himself; was likely to cause serious harm to others; was suffering severe and abnormal mental, emotional or physical distress; was experiencing substantial mental or physical deterioration of his ability to function independently, which was exhibited by H.M.R.'s inability, except for reasons of indigence, to provide for his basic needs, including food, clothing, health, or safety; and was unable to make a rational and informed decision as to whether or not to submit to treatment. Further, the trial court found that H.M.R. needed court ordered inpatient mental health services for a period of not more than twelve months. Thus, the trial court ordered that H.M.R. be committed for court ordered inpatient extended mental health services for a period not to exceed twelve months. This appeal followed.

In his sole issue, H.M.R. argues that the evidence is legally insufficient to support the trial court's order. More specifically, he contends there is no evidence that he is likely to cause serious harm to himself or others, that he was experiencing substantial mental or physical deterioration of his ability to function independently, or that he was unable to make a rational and informed decision as to whether to submit to treatment.

## Standard of Review

In a legal sufficiency review where the burden of proof is clear and convincing evidence, we must look at all the evidence in the light most favorable to the finding to determine whether a reasonable trier of fact could have formed a firm belief or conviction that its findings were true. *In re J.F.C.*, 96 S.W.3d 256, 266 (Tex. 2002). We must assume that the fact finder settled disputed facts in favor of its finding if a reasonable fact finder could do so and disregard all evidence that a reasonable fact finder could have disbelieved or found incredible. *Id.* This does not mean that we are required to ignore all evidence not supporting the finding because that might bias a clear and convincing analysis. *Id.*

## Extended Inpatient Mental Health Order

The trial judge may order a proposed patient to receive court ordered extended inpatient mental health services only if the jury, or the judge if the right to a jury is waived, finds, from clear and convincing evidence, that (1) the proposed patient is mentally ill; (2) as a result of that mental illness, he (A) is likely to cause serious harm to himself, (B) is likely to cause serious harm to others, or (C) is (i) suffering severe and abnormal mental, emotional, or physical distress, (ii) experiencing substantial mental or physical deterioration of his ability to function independently, which is exhibited by his inability, except for reasons of indigence, to provide for his basic needs, including food, clothing, health, or safety, and (iii) unable to make a rational and informed decision as to whether or not to submit to treatment; (3) his condition is expected to continue for more than ninety days; and (4) he has received court ordered inpatient mental health services under this subtitle or under Chapter 46B, Code of Criminal Procedure, for at least sixty consecutive days during the preceding twelve months. TEX. HEALTH & SAFETY CODE ANN. § 574.035(a) (West Supp. 2012).

To be clear and convincing under this statute, the evidence must include expert testimony and evidence of a recent overt act or a continuing pattern of behavior that tends to confirm the

likelihood of serious harm to the proposed patient or others, or the proposed patient's distress and the deterioration of his ability to function. TEX. HEALTH & SAFETY CODE ANN. § 574.035(e) (West Supp. 2012). The statute requires evidence of a recent act by the proposed patient, either physical or verbal, that can be objectively perceived and that is to some degree probative of a finding that serious harm to the proposed patient is probable if the person is not treated. *See State v. K.E.W.*, 315 S.W.3d 16, 24 (Tex. 2010). "Clear and convincing evidence" means the measure or degree of proof that will produce in the mind of the trier of fact a firm belief or conviction as to the truth of the allegations sought to be established. *State v. Addington*, 588 S.W.2d 569, 570 (Tex. 1979). The statutory requirements for an involuntary commitment are strict because it is a drastic measure. *In re C.O.*, 65 S.W.3d 175, 182 (Tex. App.—Tyler 2001, no pet.).

## Hearing on Application

At the hearing on the application, Howland testified that he examined H.M.R. on March 28, 2013, and diagnosed him as suffering from schizophrenia, paranoid type. According to Howland, H.M.R. was originally hospitalized because he was charged with indecency with a child and possession of cocaine, was found incompetent to stand trial, and the forensic commitment was changed to a civil commitment. He believed that H.M.R. was likely to cause serious harm to others, and was suffering severe and abnormal mental, emotional or physical distress. Howland also determined that H.M.R. was also likely to cause serious harm to himself because he had been suffering from extreme shortness of breath and chest pains for the last eight months. Although he has spoken to H.M.R. "multiple times" regarding a recommendation from the cardiologist about a heart catheterization procedure, Howland stated that H.M.R. is worried about the procedure. According to Howland, H.M.R. believes that "parasites will get into the vessels and get him." He stated that it was critical for H.M.R. to undergo the heart procedure because he could suffer a myocardial infarction.

Further, Howland testified that H.M.R. believes he has parasites, does not have any insight into his mental illness, does not believe he has a mental illness, and is afraid about "Russian" parasites at times. He stated that these behaviors indicate that H.M.R. has a mental illness. Howland did not believe that H.M.R. can provide for his basic needs, such as food, clothing, health, and safety, outside a hospital setting. He also did not believe H.M.R. was able to make a rational and informed decision whether or not to submit to treatment, and that his condition is likely to deteriorate if he does not remain in the hospital to obtain treatment.

4

Howland testified that H.M.R. has a history of mental illness; that his diagnosis was based on his personal observations, his review of H.M.R.'s medical records, and reasonable medical probability; and that the Hospital is the least restrictive available treatment at this time. He stated that H.M.R. would need to be at the Hospital at least one year before a reassessment, and would be released as soon as medically appropriate. However, Howland did not believe that an assisted living or nursing home would be more appropriate due to H.M.R.'s psychosis. He admitted that H.M.R.'s prescribed medications were capable of being taken outside a hospital setting. However, Howland testified that although H.M.R. was on a "good dose" of Clozaril, he was not responding as well as Howland would like.

H.M.R. testified that he believed he was of "sound mind." He stated that if he were released from the hospital, he would go the veteran's administration, receive a V.A. pension, and obtain housing. He stated that he was a veteran, served in the United States Air Force between 1967 and 1968, and obtained a medical honorable discharge. H.M.R. stated that he was not currently on a V.A. pension, but received one when he was at Kerrville State Hospital. He would like to be released and to be in the care of the V.A., "people that work for the federal government." If so, they "will investigate [his] claim that [he] is suffering from Russian parasites taking over [his] body." H.M.R. testified that he would take his medications and attend outpatient counseling at the V.A. hospital.

Analysis

On appeal, H.M.R. does not dispute that he is mentally ill, that his condition is expected to continue for more than ninety days, and that he has received court ordered inpatient mental health services for at least sixty consecutive days during the preceding twelve months. *See* TEX. HEALTH & SAFETY CODE ANN. § 574.035(a). Thus, we will consider whether the evidence is legally sufficient to support a finding that he is likely to cause serious harm to himself, is likely to cause serious harm to others, is experiencing substantial mental or physical deterioration of his ability to function independently, and is unable to make a rational and informed decision as to whether or not to submit to treatment. *See id.*

In the application, Howland stated that H.M.R. was experiencing shortness of breath, but did not want the heart procedure. At the hearing, he testified that H.M.R. was likely to cause serious harm to himself because he had been suffering from extreme shortness of breath and chest pains for the last eight months. However, Howland stated, H.M.R. refused to consider a

recommendation from a cardiologist to undergo a heart catheterization. He testified that H.M.R. is worried that "parasites will get into the vessels and get him."

The information regarding H.M.R.'s health is not placed in any meaningful context in order to determine whether his shortness of breath or chest pains necessitated a heart catheterization. Howland merely testified that H.M.R. "could" suffer a myocardial infarction. Further, the cardiologist referred to by Howland did not testify regarding H.M.R.'s heart condition, diagnosis, or general health, or the risk to H.M.R.'s health if he did not undergo the heart catheterization. None of this testimony shows evidence of a recent overt act or a continuing pattern of behavior that tends to confirm the likelihood of serious harm to H.M.R. *See id***.** § 574.035(e).

Further, there was no expert testimony from Howland or evidence of a recent overt act or a continuing pattern of behavior at the hearing that tended to confirm the likelihood of serious harm to others or the deterioration of H.M.R.'s ability to function. *See id***.** § 574.035(e). Nor was there any testimony from Howland at the hearing that H.M.R. was unable to make a rational and informed decision as to whether or not to submit to treatment. *See id***.** § 574.035(a)(C)(iii). We note that nothing in the Texas Health and Safety Code regarding an order for extended mental health services authorizes a trial court to base its findings solely on the physician's certificates. *See* TEX. HEALTH & SAFETY CODE ANN. § 574.031-.037 (West 2010 & Supp. 2012). Pleadings, such as the physician's certificates here, are not evidence that the statutory standard has been met. *See id***.** § 574.031 (West 2010) (stating that the Texas Rules of Evidence apply to the hearing for court ordered mental health services unless the rules are inconsistent with the subtitle); ***In re E.T.***, 137 S.W.3d 698, 700 (Tex. App.—San Antonio 2004, no pet.); *see also* ***Laidlaw Waste Sys. (Dallas), Inc. v. City of Wilmer***, 904 S.W.2d 656, 660 (Tex. 1995) (noting that, generally, pleadings are not competent evidence, even if sworn or verified).

Here, there was no evidence from Howland at the hearing regarding how H.M.R.'s behavior confirmed the likelihood that he was experiencing a deterioration of his ability to function, and why H.M.R. lacked the capacity to make a decision to submit to treatment. *See **In re E.G.***, 249 S.W.3d 728, 731-32 (Tex. App.—Tyler 2008, no pet.). Further, a conclusory statement by Howland in the application, without any testimony or explanation from him at the hearing, cannot produce in the mind of the trier of fact a firm belief or conviction as to the truth of the allegations sought to be established. *See **Addington***, 588 S.W.2d at 570.

6

Considering all the evidence in the light most favorable to the finding, we conclude a reasonable trier of fact could not have formed a firm belief or conviction that H.M.R. is likely to cause serious harm to himself, is likely to cause serious harm to others, is experiencing substantial mental or physical deterioration of his ability to function independently, and is unable to make a rational and informed decision as to whether to submit to treatment. *See **In re J.F.C.**,* 96 S.W.3d at 266. Thus, the evidence does not satisfy the statutory requirement for clear and convincing evidence in support of the order for extended inpatient mental health services. *See* TEX. HEALTH & SAFETY CODE ANN. § 574.035(a). Therefore, the evidence is legally insufficient to support the trial court's order. Accordingly, we sustain H.M.R.'s sole issue.

## DISPOSITION

Based upon our review of the record, we conclude that the evidence is legally insufficient to support the trial court's order for extended inpatient mental health services. Therefore, we ***reverse*** the trial court's order and ***render*** judgment denying the State's application for court ordered extended mental health services.

**BRIAN HOYLE**
Justice

Opinion delivered July 17, 2013.
*Panel consisted of Worthen, C.J., Griffith, J., and Hoyle, J.*

(PUBLISH)

7



# COURT OF APPEALS

## TWELFTH COURT OF APPEALS DISTRICT OF TEXAS

# JUDGMENT

**JULY 17, 2013**

## NO. 12-13-00113-CV

**THE STATE OF TEXAS FOR THE BEST
INTEREST AND PROTECTION OF H.M.R.**

Appeal from the County Court at Law
of Cherokee County, Texas. (Tr.Ct.No. 40,101)

THIS CAUSE came to be heard on the appellate record and the briefs filed herein, and the same being considered, because it is the opinion of this court that there was error in the judgment of the court below, it is ORDERED, ADJUDGED and DECREED by this court that the trial court's order be **reversed** and judgment **rendered** denying the State's application for court ordered extended mental health services; and that this decision be certified to the court below for observance.

Brian Hoyle, Justice.
*Panel consisted of Worthen, C.J., Griffith, J., and Hoyle, J.*

# THE STATE OF TEXAS
# M A N D A T E

**\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\***

**TO THE COUNTY COURT AT LAW of CHEROKEE COUNTY, GREETING:**

Before our Court of Appeals for the 12th Court of Appeals District of Texas, on the 17th day of July, 2013, the cause upon appeal to revise or reverse your judgment between

**THE STATE OF TEXAS FOR THE BEST
INTEREST AND PROTECTION OF H.M.R.**

**NO. 12-13-00113-CV; Trial Court No. 40,101**

Opinion by Brian Hoyle, Justice.

was determined; and therein our said Court made its order in these words:

"THIS CAUSE came to be heard on the appellate record and the briefs filed herein, and the same being considered, because it is the opinion of this court that there was error in the judgment of the court below, it is ORDERED, ADJUDGED and DECREED by this court that the trial court's order be **reversed** and judgment **rendered** denying the State's application for court ordered extended mental health services; and that this decision be certified to the court below for observance."

**WHEREAS, WE COMMAND YOU** to observe the order of our said Court of Appeals for the Twelfth Court of Appeals District of Texas in this behalf, and in all things have it duly recognized, obeyed, and executed.

**WITNESS, THE HONORABLE JAMES T. WORTHEN**, Chief Justice of our Court of Appeals for the Twelfth Court of Appeals District, with the Seal thereof affixed, at the City of Tyler, this the _____ day of _____, 201\_\_\_\_.

CATHY S. LUSK, CLERK

By:_____
    Deputy Clerk