NO.
12-07-00140-CV

 

IN THE COURT OF APPEALS 

 

TWELFTH COURT OF APPEALS DISTRICT

 

TYLER, TEXAS

THE STATE OF TEXAS FOR        §                      APPEAL FROM THE 

 

THE BEST INTEREST AND          §                      COUNTY COURT AT LAW

 

PROTECTION OF S.D.       §                      CHEROKEE
COUNTY, TEXAS

                                                                                                                                                           


MEMORANDUM OPINION

            S.D. appeals
from an order for temporary inpatient mental health services and an order to
administer psychoactive medication.  In
two issues, S.D. asserts the evidence is legally and factually insufficient to
support the order for temporary inpatient mental health services and that the
trial court erred in ordering the administration of psychoative medication
because the order for temporary inpatient mental health services is
invalid.  We reverse and render.

 

Background








            On
March 28, 2007, an application for court ordered temporary mental health
services was filed requesting the trial court to commit S.D. to the Rusk State
Hospital (the “Hospital”) for a period not to exceed ninety days.  At the time the application was filed, S.D.
was a patient at the Hospital. The application was supported by two physician’s
certificates of medical examination for mental illness.  The first certificate stated that, on March
29, 2007,  Dr. Sethurama Srinivasan
evaluated and examined S.D. and diagnosed her with bipolar I disorder.  According to Srinivasan, S.D. was mentally
ill, was likely to cause serious harm to herself, and was suffering severe and
abnormal mental, emotional, or physical distress, was experiencing substantial
mental or physical deterioration of her ability to function independently, and
was unable to make a rational and informed decision as to whether or not to
submit to treatment.  As the basis for
this opinion, Srinivasan reported that S.D. was delusional, depressed,
hyperactive, and over talkative.  Also,
he stated that she felt she was going to hurt her baby or herself. 

            On
April 5, 2007, Dr. Charles Plyler evaluated and examined S.D. and diagnosed her
with schizophrenia, undifferentiated. 
According to Plyler, S.D. was mentally ill and was suffering severe and
abnormal mental, emotional, or physical distress, was experiencing substantial
mental or physical deterioration of her ability to function independently, and
was unable to make a rational and informed decision as to whether or not to
submit to treatment.  As his basis for
this opinion, Plyler stated that S.D. told him that she did not know where her
two year old daughter was and that she might be dead.  He stated that S.D.’s judgment was impaired
by “faulty reality appreciation.” Further, Plyler stated that S.D. believed she
was pregnant despite evidence to the contrary. 
He stated that S.D. was not able to attend to her own biological needs
for survival.

            The
hearing on the application for court ordered temporary mental health services
was held on April 10.  After a hearing,
the trial court found, by clear and convincing evidence, that S.D. was mentally
ill and was suffering severe and abnormal mental, emotional, or physical
distress, was experiencing substantial mental or physical deterioration of her
ability to function independently, exhibited by S.D.’s inability, except for
reasons of indigence, to provide for her basic needs, including food, clothing,
health, or safety, and was unable to make a rational and informed decision as
to whether or not to submit to treatment. 
The trial court entered an order for temporary inpatient mental health
services, committing S.D. to the Hospital for a period not to exceed ninety
days.  In a separate order signed the
same day, the trial court authorized the Texas Department of Mental Health and
Mental Retardation (the “Department”) to treat S.D. with psychoactive
medications, including antidepressants, antipsychotics, mood stabilizers, and
anxiolytics/sedatives/hypnotics.  This
appeal followed.

 

Sufficiency
of the Evidence

            In
her first issue, S.D. argues that the evidence is legally and factually
insufficient to support the order of commitment.  S.D. contends that the evidence did not
establish an overt act or a continuing pattern of behavior by clear and
convincing evidence.  Further, she argues
that the State failed to establish a continued deterioration of her ability to
function.

Standard of Review

            In
a legal sufficiency review where the burden of proof is clear and convincing
evidence, we must look at all the evidence in the light most favorable to the
finding to determine whether a reasonable trier of fact could have formed a
firm belief or conviction that its findings were true.  In re J.F.C., 96 S.W.3d 256,
266 (Tex. 2002).  We must assume that the
fact finder settled disputed facts in favor of its finding if a reasonable fact
finder could do so and disregard all evidence that a reasonable fact finder
could have disbelieved or found incredible. 
Id.  This does not
mean that we are required to ignore all evidence not supporting the finding
because that might bias a clear and convincing analysis.  Id. 

            The
appropriate standard for reviewing a factual sufficiency challenge is whether
the evidence is such that a fact finder could reasonably form a firm belief or
conviction about the truth of the petitioner’s allegations.  In re C.H., 89 S.W.3d 17, 25
(Tex. 2002).  In determining whether the
fact finder has met this standard, we consider all the evidence in the record,
both that in support of and contrary to the trial court’s findings.  Id. at 27-29.  Further, we must consider whether disputed
evidence is such that a reasonable fact finder could not have reconciled that
disputed evidence in favor of its finding. 
In re J.F.C., 96 S.W.3d at 266.  If the disputed evidence is so significant
that a fact finder could not reasonably have formed a firm belief or
conviction, then the evidence is factually insufficient.  Id.  

Involuntary Commitment Order

            The
trial judge may order a proposed patient to receive court ordered temporary
inpatient mental health services if the judge or jury finds, from clear and
convincing evidence, that the proposed patient is mentally ill and, as a result
of the mental illness, she is likely to cause serious harm to herself, is
likely to cause serious harm to others, or is (i) suffering severe and abnormal
mental, emotional, or physical distress, (ii) experiencing substantial mental
or physical deterioration of her ability to function independently, which is
exhibited by her inability, except for reasons of indigence, to provide for her
basic needs, including food, clothing, health, or safety, and (iii) unable to
make a rational and informed decision as to whether or not to submit to
treatment.  Tex. Health & Safety Code Ann. § 574.034(a) (Vernon
2003). 

            To
be clear and convincing under this statute, the evidence must include expert
testimony and, unless waived, evidence of a recent overt act or a continuing
pattern of behavior that tends to confirm either the likelihood of serious harm
to the proposed patient or others or the proposed patient’s distress and the
deterioration of her ability to function. 
Tex. Health & Safety Code
Ann. § 574.034(d) (Vernon 2003). 
Clear and convincing evidence means the measure or degree of proof that
will produce in the mind of the trier of fact a firm belief or conviction as to
the truth of the allegations sought to be established.  State v. Addington, 588 S.W.2d
569, 570 (Tex. 1979).  The statutory
requirements for an involuntary commitment are strict because it is a drastic
measure.  In re C.O., 65
S.W.3d 175, 182 (Tex. App.–Tyler 2001, no pet.). 

            The
State provided expert testimony from Srinivasan, Plyler, and Dr. Satyajeet
Lahiri. Srinivasan examined S.D. and diagnosed her with bipolar I disorder.
Plyler examined S.D. and diagnosed her with schizophrenia,
undifferentiated.  At trial, Lahiri
testified that he reviewed the medical certificates prepared by Srinivasan and
Plyler and agreed with Srinivasan’s finding that S.D. suffered from bipolar I
disorder.  All three doctors provided
evidence showing that S.D. was mentally ill. 
Srinivasan stated that S.D. was delusional, depressed, hyperactive, and
over talkative. He reported that S.D. felt that she was going to hurt her baby
or herself. Plyler stated that S.D. told him that she did not know where her
two year old daughter was and that she might be dead.  Further, S.D. believed that she was pregnant
despite evidence to the contrary.  Plyler
reported that S.D.’s judgment was impaired by “faulty reality appreciation.”  At trial, Lahiri testified that S.D. had “bizarre”
somatic delusions, including believing that she had two hearts, one sitting on
top of the other, that she had delivered four babies while at the Hospital even
though exams revealed that she had not, and that she was carrying twins.[1]

            Expert
testimony confirming mental illness, standing alone, will not support an
involuntary commitment.  T.G. v. State,
7 S.W.3d 248, 252 (Tex. App.–Dallas 1999, no pet.). Evidence of continuing
delusional or paranoid behavior merely reflects that an individual is mentally
ill and in need of hospitalization, but does not provide the overt act or
continuing pattern of behavior necessary to support a commitment.  See In re C.O., 65
S.W.3d at 182; Broussard v. State, 827 S.W.2d 619, 622 (Tex. App.–Corpus
Christi 1992, no writ).  An expert
opinion recommending commitment must be supported by the factual bases on which
it is grounded and not simply recite the statutory criteria.  See J.M. v. State, 178 S.W.3d
185, 193 (Tex. App.–Houston [1st Dist.] 2005, no pet.).  What is necessary is the expert’s description
of the patient’s specific behaviors on which his or her opinion is based.  See id.  No doctor provided evidence of an overt act
and there is no evidence in the record of an overt act.  As such, we must examine the record to
determine where there is clear and convincing evidence showing a continuing
pattern of behavior that tended to confirm the likelihood of her distress and
the deterioration of her ability to function. 
See Tex. Health &
Safety Code Ann. § 574.034(d). 

            Plyler
stated that S.D. was not able to attend to her own biological needs for
survival.  At trial, Lahiri testified
that S.D. had very eccentric ideas about food and was unpredictable.  He stated that S.D. believed food was poison and
that her obsession could interfere with her ability to provide for her basic
needs.  He believed it was “questionable”
whether S.D. could provide adequate nutrition for herself although he admitted
that she could probably eat basic meals. 
However, Lahiri admitted that S.D. was able to feed  and dress herself without assistance or
prompting, and that S.D.’s beliefs about food had not interfered with her
ability to eat at the Hospital.  He also
admitted that S.D.’s ability to take care of basic meals was sufficient to
sustain life.  At trial, S.D. testified
that she believed that two to three meals a day was appropriate, that she
prepared snacks and took vitamins, and that she ate “anything,” including
pizza, hamburger, and bread.  S.D. stated
that she went on diets, but that she did not “starve” herself.  Regarding her health and safety, Lahiri
admitted that S.D. had the ability and knowledge to seek medical treatment if
she had a broken arm and to understand that she needed to leave a burning
building.  S.D. testified that she would
go to the hospital if she had a broken arm or a stomach ache that would not go
away.

            Lahiri
offered no specific evidence of a continuing pattern of behavior that would
generally affect S.D.’s ability to function independently on a daily basis
without the imposition of mental health services.  See Broussard, 827 S.W.2d at
622.  To the contrary, Lahiri testified
that S.D. was capable of meeting her daily physical needs without assistance or
prompting, that her beliefs had not prevented her from eating at the Hospital,
and that her ability to take care of basic meals was adequate to sustain
life.  Moreover, there was no testimony
or evidence that S.D. was refusing to eat or was unable to provide for her
basic needs, including food, clothing, health, or safety.  See Tex.
Health & Safety Code Ann. § 574.034(a)(2)(C)(ii). The State must
show more than delusions or other facts that merely confirm S.D.’s mental
illness to meet the evidentiary standard for a temporary commitment.  See In re C.O., 65 S.W.3d at 182. 

            Lahiri
points out, however, that S.D. could encounter dangerous situations.  Lahiri also believed that complex actions,
such as going to a restaurant, ordering food, or preparing meals, could be a
problem for S.D.  But these opinions were
not supported by a factual basis or by a description of specific behaviors by
S.D. on which his opinions were based. 
Therefore, we cannot say that the evidence would lead a reasonable trier
of fact to form a firm belief or conviction that S.D. had engaged in a
continuing pattern of behavior tending to confirm her distress and the
deterioration of her ability to function.  See Tex.
Health & Safety Code Ann. § 574.034(d).  Therefore, viewing the evidence in the light
most favorable to the findings, we conclude that a reasonable trier of fact
could not have formed a firm belief or conviction that S.D. was suffering
severe and abnormal mental, emotional, or physical distress, was experiencing
substantial mental or physical deterioration of her ability to function
independently, and was unable to make a rational and informed decision as to
whether or not to submit to treatment.  See
Tex. Health & Safety Code Ann.
§ 574.034(a), (d); In re J.F.C., 96 S.W.3d at 266.  Consequently, the evidence is legally
insufficient to support the trial court’s finding based upon section 574.034(d)
of the Texas Health & Safety Code. 
Having determined that the evidence is legally insufficient, it is
unnecessary for us to address S.D.’s argument that the evidence is factually
insufficient to support the trial court’s finding.  See Tex.
R. App. P. 47.1.  We sustain S.D.’s
first issue.

Psychoactive Medication Order

            In
her second issue, S.D. argues that the trial court erred in ordering the
administration of psychoactive medication. 
A trial court may issue an order authorizing the administration of one
or more classes of psychoactive medication to a patient who is under a court
order to receive inpatient mental health services.  Tex.
Health & Safety Code Ann. § 574.106(a) (Vernon Supp. 2007).  The trial court may issue an order only if
the trial court finds by clear and convincing evidence after the hearing that
the patient lacks the capacity to make a decision regarding the administration
of the proposed medication and treatment with the proposed medication is in the
best interest of the patient.  Tex. Health & Safety Code Ann. § 574.106(a-1)
(Vernon Supp. 2007).  Having found the
evidence legally insufficient to support the trial court’s order of commitment,
we have held that the trial court’s order for temporary inpatient mental health
services is invalid.  Therefore, the
order authorizing administration of psychoactive medication is also invalid.  See Tex.
Health & Safety Code Ann. § 574.106(a).  We sustain S.D.’s second issue.

 

Conclusion

            Based
upon our review of the record, we conclude that the evidence is legally
insufficient to support the trial court’s order of commitment for temporary
inpatient mental health services. Therefore, the order for administration of
psychoactive medication is invalid.

            We
reverse the trial court’s order of commitment for temporary
inpatient mental health services and for administration of psychoactive
medication.  We render
judgment denying the State’s application for court ordered temporary mental
health services and for an order to administer psychoactive medication.

 

 

                                                                                                    SAM GRIFFITH   

                                                                                                               Justice

 

 

Opinion
delivered November 30, 2007.

Panel
consisted of Worthen, C.J., Griffith, J., and Hoyle, J.

 

 

 

 

 

 

 

 

(PUBLISH)











[1]
We are unable to confirm from the record whether S.D. in fact has a two year
old daughter.  We are also unable to
determine whether S.D.’s feeling that she would hurt her baby relates to the
two year old, one of the babies she believes she has delivered while at the
Hospital, or one of the unborn twins she believes she is carrying.